The **UNITED STATES**, Plaintiff,

v.

**Hubert Geroid BROWN, a/k/a H. Rap Brown, a/k/a R. H. Brown, Defendant.**

**Crim. A. No. 31185.**

United States District Court, E. D. Louisiana, New Orleans Division.

Jan. 4, 1971.

Gerald J. Gallinghouse, U. S. Atty., Julian R. Murray, Patrick McGinity, Asst. U. S. Attys., for plaintiff.

William M. Kunstler, New York City, Murphy W. Bell, Etta Kay Hearn, Baton Rouge, La., for defendant.

RUBIN, District Judge:

## I. THE FACTS

Defendant was arrested on February 21, 1968, on charges that he had, on that day, made threats against the life of Special Agent William H. Smith of the Federal Bureau of Investigation "and/or members of his family." On March 5, 1968, a Grand Jury returned a three-count indictment charging defendant with one violation of 18 U.S.C. §§ 111 and 114, and two violations of 18 U.S.C. § 1503. On March 13, 1968, he pleaded not guilty.

On April 29, 1968, defendant made various motions, including one to disqualify Judge Lansing L. Mitchell, to whom this case was originally assigned. In August, the government noticed the motions for a hearing on September 11,

1968. This hearing was continued on the *ex parte* application of the Government to September 25, 1968, because the government was "not prepared at this time to proceed with the hearing on the scheduled motions."

On October 7, 1968, Judge Mitchell denied all of defendant's motions; however he ordered, that in lieu of a bill of particulars, a copy of the proceedings before the United States Commissioner be given to defendant. Judge Mitchell recused himself because of his previous employment as a special agent of the Federal Bureau of Investigation. The case was then reallotted in accordance with the court's standing allotment procedure, and assigned to Section "C" of this court.

Less than a month after this indictment was returned, on May 22, 1968, the defendant was convicted of violating the Federal Firearms Act, 15 U.S.C. § 902(e), in Case No. 30966 on the docket of this court, and he was sentenced to five years imprisonment. The trial took nine (9) days, and the defendant, who was without substantial means, proceeded to appeal in forma pauperis. On April 3, 1969, the Fifth Circuit vacated the judgment and remanded the case to the District Court for a hearing to determine if evidence used against the defendant was the product of illegal electronic surveillance of his conversations. See Alderman v. United States, 1969, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176. The determination that this had not been done was made by Judge Mitchell on July 24, 1970, United States v. Brown, E.D.La.1970, 317 F.Supp. 531.

In this district, the U. S. Attorney has by custom assigned criminal cases for trial, and each section of the court has simply made blocks of trial dates (1 week in eight) available for that purpose. After this case was reallotted to my section, the government did not attempt to move the case for trial.

Early in each calendar year and in the mid-summer of each year, it is my practice to write to the United States Attorney and inquire about the status of each pending case that is not assigned for trial. I did this in 1969, with respect to this case as well as all others pending on my criminal docket. My files do not contain a copy of the response with respect to this case in early 1969, but, after the mid-year inquiry, on August 11, 1969, Mr. Gene Palmisano, first assistant United States Attorney, replied that the *Brown* case was "awaiting trial." However, he did not assign the case for trial. In early November, I received a report from the Judicial Conference of the United States declaring a judicial emergency with respect to all criminal cases that had been pending for one year. Therefore, on November 13, 1969, I notified the United States Attorney of the Judicial Conference Resolution by letter (sending a copy to counsel for defendant), and pointed out that "the indictment in this case * * * has been pending since March 5, 1968." As a result of this letter, a conference with counsel was arranged by the court on April 30, 1970.

Following this conference, a hearing was scheduled for 2:00 P.M. on May 20, 1970, "so that the Court can fix a trial date that will allow for adequate preparation for trial for the United States and for counsel for the defendant." In addition, June 15, 1970 was tentatively set as the trial date. Upon motion by defendant, the hearing was rescheduled for June 3, 1970, and the trial date was reset for January 18, 1971.

On May 29, 1970, defendant moved this court for an order dismissing the indictment on the ground that he had been denied a speedy trial or, in the alternative, granting him an indefinite adjournment of trial. The evidentiary hearing requested by defendant was set by agreement of counsel for July 23, 1970. The hearing was held on the date scheduled. However, counsel were engaged in other pressing matters and the transcript was not completed and briefs finally filed until November 10, 1970.

## II. REASONS FOR THE GOVERNMENT'S FAILURE TO ASSIGN THE CASE FOR TRIAL

Louis C. LaCour, who was U. S. Attorney until January, 1970, testified that, after telephone conversations with Carl Belcher, then Chief of the General Crime Section, Criminal Division, Department of Justice, "we agreed * * * that we would allow the 902(e) case to run * * * its course on appeal before we would consider setting this one for trial." He testified that his office had also taken into account, in deciding not to assign the case, the considerations that a trial of the defendant would involve "problems * * * from the security standpoint" and might "be interpreted as harassment * * *."

## III. DEFENDANT'S POSITION

The defendant was physically available for trial between March 5, 1969, and November 16, 1969, but he did not appear for the July hearing, and at that time his counsel stated that they had no knowledge of his whereabouts or of the reason for his non-appearance. (At the same time, because of his failure to appear, the government moved to forfeit his bond). Defendant's counsel presented evidence that the lapse of time had worked to his detriment because some of the potential witnesses, who had apparently overheard the conversation between Mr. Brown and the FBI agent could not be located, and others (who were University students at the time) no longer resided in this area. In addition, evidence was presented that the lapse of time would affect the witness' memory.

Defense counsel, therefore, urge that that the failure of the government to try defendant before November, 1969, when the court itself commenced action in the case, denied him his right to a speedy trial, secured by the Sixth Amendment to the United States Constitution.

## IV. THE NATURE OF THE RIGHT TO A SPEEDY TRIAL

The right to a speedy trial, secured by the Sixth Amendment to the United States Constitution, "has its roots at the very foundation of our English law heritage." Klopfer v. North Carolina, 1967, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1. The right is as old as written constitutions, and "the history of the right to a speedy trial and its reception in this country clearly establish that it is one of the most basic rights preserved by our Constitution."

The purposes of the constitutional guarantee as set forth by the Supreme Court in Smith v. Hooey, 1969, 393 U.S. 347, 378, 89 S.Ct. 575, 577, 21 L.Ed.2d 607 are:

"[1] to prevent undue and oppressive incarceration prior to trial, ■ to minimize anxiety and concern accompanying public accusation, and ■ to limit the possibilities that long delay will impair the ability of an accused to defend himself."

Only months ago, the Supreme Court, in Dickey v. Florida, 1970, 398 U.S. 30, 90 S.Ct. 1564, 1568–1569, 26 L.Ed.2d 26, reversed a conviction because the state had delayed trial for seven years. Writing for the majority, Chief Justice Burger stated:

"The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality on the need to have charges promptly exposed. If the case for the prosecution calls on the accused to meet charges rather than rest on the infirmities of the prosecution's case, as is the defendant's right, the time to meet them is when the case is fresh. Stale claims have never been favored by the law, and far less so in criminal cases. Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging

authority is to provide a prompt trial. This is brought sharply into focus when, as here, the accused presses for an early confrontation with his accusers and with the state. Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable. Here, however, no valid reason for the delay existed; it was exclusively for the convenience of the state. On this record the delay with its consequent prejudice is intolerable as a matter of fact and impermissible as a matter of law."

In the present case the defendant did not press, as *Dickey* did, for a trial. There is considerable authority that the right to a speedy trial is waived if the defendant does not demand one,[1] but the American Bar Association's proposed Minimum Standards for Criminal Justice, reject the "demand doctrine". See proposed rule 2.2.[2] Nor does the implication of a waiver from failure to demand trial meet the criteria assigned *for finding a waiver of other constitutional rights: that the waiver be an intentional relinquishment or abandon-*

---

1. *See, e. g.* Harlow v. United States, 5 Cir. 1962, 301 F.2d 361, 367; United States v. Lustman, 258 F.2d 475 (C.A. 2 Cir. 1958); United States v. Kaye, 2 Cir. 1958, 251 F.2d 87, cert. denied 1958, 356 U.S. 919, 78 S.Ct. 702, 2 L.Ed.2d 714; Collins v. United States, 9 Cir. 1946, 157 F.2d 409; Bayless v. United States, 8 Cir. 1945, 147 F.2d 169, reversed on other grounds, 1945, 150 F.2d 236; Pietch v. United States, 10 Cir. 1940, 110 F.2d 817, 129 A.L.R. 563, cert. denied 1940, 310 U.S. 648, 60 S.Ct. 1100, 84 L.Ed. 1414.

2. 2.2. When time commences to run.

The time for trial should commence running, *without demand by the defendant*, as follows:

(a) from the date the charge is filed. except that if the defendant has been continuously held in custody or on bail or recognizance until that date to answer for the same crime or a crime based on the same conduct or arising from the same criminal episode, then the time for trial should commence running from the date he was held to answer;

(b). if the charge was dismissed upon motion of the defendant and thereafter the defendant was held to answer or charged with an offense, from the date the defendant was so held to answer or charged, as above; or

(c) if the defendant is to be tried again following a mistrial, an order for a new trial, or an appeal or collateral attack, from the date of mistrial, order granting a new trial, or remand.

"SECTION 2.2. GENERALLY

"Although most speedy trial statutes are silent on the question of whether the defendant must demand trial to commence the time running, the majority of appellate cases require demand. Annot., 57 A.L.R.2d 302, 326 (1958); Annot.. 129 A.L.R. 572, 587 (1940). It is often said that requiring demand will prevent 'technical evasion of the charge.' Note, 57 COLUM. L. REV. 846, 853. (1957).

"A strong minority, however, rejects the 'demand doctrine' and requires only a motion to dismiss filed before trial. These courts place the duty of procuring prompt trial upon the state, attributing significance to the fact that only the state is empowered to bring the charge to trial. Forcing defendant to press for speedy trial would, according to this view. enable the state to do nothing until defendant acts, and then, if he acts too late to claim waiver.

"NOTE, 57 COLUM.L.REV. 846, 853 (1957).

"This latter view is adopted in the standard. One reason for this position is that there are a number of situations, such as where the defendant is unaware of the charge or where the defendant is without counsel, in which it is unfair to require a demand. *Id. at 854–55* * * *. Jurisdictions with a demand requirement are faced with the continuing problem of defining exceptions, a process which has not always been carried out with uniformity. Id. at 964–65. More important, the demand requirement *is inconsistent with the public interest* in prompt disposition of criminal cases. Consistent with the policies expressed in Part I of these standards, the trial of a criminal case should not be unreasonably delayed merely because the defendant does not think that it is in his best *interest to seek prompt disposition of* the charge." (Emphasis supplied.)

ment of a known right. See Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

■ Justice Brennan, concurring in *Dickey*, stated, "The accused has no duty to bring on his trial." The majority opinion did not consider the demand doctrine. But, as quoted above, it points out that the charging authority has the duty of providing a prompt trial. Hence the motion can not be dealt with on the facile basis that the defendant was not entitled to an earlier trial because he did not ask for one. Compare United States v. Mark II Electronics, 1968, D.C., 283 F.Supp. 280, holding that a dismissal could be granted under Rule 48(b) of the Federal Rules of Criminal Procedure even where the defendant had not demanded an earlier trial.

■ The *Dickey* decision indicates that, among the factors to be considered under the Sixth Amendment, are the length of the time that elapses until trial and whether there is a valid reason for the delay. Here part of the delay resulted from the consideration of the defendant's motions. Some of these clearly affected preparation for trial. These were not disposed of until October, 1968. Meanwhile the defendant was being actively prosecuted on other federal charges and was accused of state offenses in the State of Maryland. Between the time the motions were acted on and the time when the court began, on its own motion, to move the case forward, there was an intervening delay of thirteen months. The evidence indicates that this delay by the U. S. Attorney was purposeful but not that it was oppressive or designed to prejudice the defendant. And while it is clear that the lapse of time will affect the memory of all the witnesses—those for the prosecution as well as those for the defense—it is not clear that the lapse of time between October, 1968 and November, 1969, caused any greater loss of fresh

recollection than had already occurred. The testimony of defendant's witnesses indeed, indicates that memory lapse is greatest immediately after the occurrence of the event.

■ It can hardly be doubted that the government's attempt to prosecute Mr. Brown for another charge while his appeal from his earlier conviction was pending would have been considered oppressive. Indeed it has been argued in this case: "The various prosecutions of this defendant, both state and federal, represent a classic example of political persecution, American-style." [3] This argument would have been reinforced had trial been set on the present charge while the appeal on the other federal conviction was pending. In addition, it was not inappropriate for the U. S. Attorney to consider the possible oppressive effect on an impecunious defendant of fighting in two federal courts simultaneously, while charged with crimes in state courts as well.

Finally the suggestion that the delay here has been prejudicial to the defendant is not proved by the evidence. Defense counsel testified that some of their witnesses could not be located in a hurried search prior to the July hearing on motions. This does not mean that they cannot be served with subpoenas prior to a trial on the merits, or that, once they are located, their memories will actually have failed. If events at the trial prove that the defendant has in fact, been prejudiced by the lapse of time, the motion can always be renewed then.

■ Time is a relative factor; its importance is to be determined in each case according to circumstances. In United States v. Ewell, 1966, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627, the failure to prosecute after a 19 month delay was not found prejudicial, and no case has been called to the court's attention where a failure to prosecute for a period as brief as that involved here has

3. See affidavit of William Kunstler, May, 29, 1970, filed with motion for dismissal, page 5.

been held a denial either of Sixth Amendment rights or of the rights secured by Rule 48(b).[4] For these reasons, the motion to dismiss is denied.

4. *See e. g.* United States v. Hill, 4 Cir. 1962, 310 F.2d 601; United States v. Kaye, 2 Cir. 1958, 251 F.2d 87, cert. denied 356 U.S. 919, 78 S.Ct. 702, 2 L.Ed. 2d 714; Bayless v. United States, 8 Cir. 1945, 147 F.2d 169, reversed on other grounds 150 F.2d 236.