UNITED STATES of America, Plaintiff-Appellee,

v.

H. Rap BROWN, Defendant-Appellant.

No. 75–2999.

United States Court of Appeals, Fifth Circuit.

Sept. 24, 1976.

Elizabeth M. Schneider, c/o Center for Constitutional Rights, William M. Kunstler, New York City, David Dennis, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before WISDOM and INGRAHAM, Circuit Judges, and GROOMS, District Judge.

PER CURIAM:

Appellant Brown was found guilty of violating 15 U.S.C. § 902(e)[1] and sentenced to five years' imprisonment and fined $2,000.00. He appeals from a denial of his motion to vacate his conviction and sentence, to dismiss the indictment, or, in the alternative to correct or reduce his sentence and fine, pursuant to 28 U.S.C. §§ 2255, 2241, and Rule 35, F.R.Cr.P. He asserts prejudicial error based upon a pretrial statement of the judge, governmental misconduct in selective prosecution, and in entrapment, and failure of the court discovery on the last named issues on the trial of the motion.

Appellant was convicted in May 1968. Following sundry proceedings in this Court[2] and in the court below[3], we affirmed his conviction[4] on August 22, 1973.

In May 1974, James B. Lake, Jr., a patent attorney of New Orleans, wrote appellant's counsel a letter, wherein he stated that prior to appellant's trial in 1968 he had met the trial judge at a meeting of the Louisiana State Bar Association at the Buena Vista Motel in Biloxi, Mississippi, and that while they were sitting around the swimming pool on the grounds of the motel, he heard the judge say that he had been told that he was going to preside at appellant's trial and "that he was going to get that nigger."

Shortly after receipt of the letter, appellant filed the instant motion for the relief indicated, and as a part thereof moved that the judge recuse himself from hearing the motion or taking any further action in the case. The judge recused himself. The case was then assigned to Judge Cassibry. On January 24, 1975, Judge Cassibry heard testimony from three witnesses.

After supplying background facts on the occasion of their meeting, Lake testified:

"I don't remember exactly who it was but I was introduced to the Judge and I didn't have anything much to say and somebody inquired as to his health, he had been feeling unwell or something and he said he was taking very good care of it because he had heard that he had been drawn as the Judge on the trial of Rap Brown which was of some notoriety in the papers and then he went on to say that he was going to be very sure that he didn't get sick because he was going to get that, as I recall nigger, I am not sure, but that was the general meaning of the exchange of the statement."

James H. Drury, a Louisiana attorney, who introduced the judge to Lake at the swimming pool, testified that he did not hear the statement, but could not state that he was in the presence of the judge and Lake continuously for all the time the two were together.

The judge testified that he recalled meeting Lake with Drury and that Drury introduced Lake to him. When asked if he ever made such a statement, the judge answered:

"I can't remember what statement I made at that time but I would categorically deny that I would make such a statement."

At the conclusion of the hearing on the motion, Judge Cassibry ruled:

"On today's hearing, I think Mr. Lake's version of what happened, happened. I don't wish to say that anyone lied. I think, at best, recollections are not clear except Mr. Lake's. Mr. Lake's recollection was clear and I think his version of what was said was probably said. That,

1. "It shall be unlawful for any person who is under indictment or who has been convicted of a crime punishable by imprisonment for a term exceeding one year or who is a fugitive from justice to ship, transport, or cause to be shipped or transported in interstate or foreign commerce any firearm or ammunition."

2. For details see *United States v. Brown*, 5 Cir., 456 F.2d 1112.

3. *United States v. Brown* (E.D.La.), 317 F.Supp. 531, and (E.D.La.), 321 F.Supp. 681.

4. *United States v. Brown*, 5 Cir., 484 F.2d 418, cert. den., 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974).

taken with all of the other remarks that the Judge made in some of his rulings, his sentences, his rulings, the bond cast a serious shadow on this case as far as the appearance of justice is concerned."

In his written opinion of September 15, 1975, Judge Cassibry confirmed the ruling referred to, and held that the remark was prejudicial, but stated that the question was whether appellant, nevertheless, got a fair trial. He then held that he need only to study the record and determine that issue. Upon a review of the record he found that appellant had had a fair trial.

Appellant challenges Judge Cassibry's conclusion that the record reveals that he had a fair trial. He points to eleven remarks and rulings which he asserts demonstrate the contrary. Foregoing a discussion of such remarks and rulings, the questions posed by Judge Cassibry are not answered by the record. They were:

"If I decide that the Judge was prejudiced by these remarks, how am I to know what went on in the trial off the record, the things that might have affected the jury? The manner in which objections were overruled or sustained, the various ways that Judges may, if they wish, influence events during a trial, how would I know that?"

The record does not reflect the tone of voice of the judge, his facial expressions, or his unspoken attitudes and mannerisms, all of which, as well as his statements and rulings of record, might have adversely influenced the jury and affected its verdict.

Within the purview of a fair trial, the judge himself is on trial, and must be always aware of that fact.

■ The truth pronounced by Justinian more than a thousand years ago that, "Impartiality is the life of justice," is just as valid today as it was then. Impartiality finds no room for bias or prejudice. It countenances no unfairness and upholds no miscarriage of justice. Bias and prejudice can deflect the course of justice and effect

the measure of its judgments. If the judge finds himself possessed of those sentiments, he should recuse himself; or, if he does not, confront the likelihood of proceedings under the statute[5] to require him to do so.

The Supreme Court in *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942, said:

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always *endeavored to prevent even the probability of unfairness. . . .* Circumstances and relationships must be considered. This Court has said, however, that 'Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused, denies the latter due process of law.' *Tumey v. Ohio*, 273 U.S. 510, 532 [47 S.Ct. 437, 444, 71 L.Ed. 749]. [T]o perform its high function in the best way '*justice must satisfy the appearance of justice.*' *Offutt v. United States*, 348 U.S. 11, 14 [75 S.Ct. 11, 13, 99 L.Ed. 11]." [Emphasis supplied]

Citing *Murchison*, the court in *Knapp v. Kinsey*, 6 Cir., 232 F.2d 458, stated:

"One of the fundamental rights of a litigant under our judicial system is that he is entitled to a fair trial in a fair tribunal, and that fairness requires an absence of actual bias or prejudice in the trial of the case."

In *Rapp v. Van Dusen*, 3 Cir., 350 F.2d 806, 812, the court declared that:

"For the proper administration of justice requires of a judge not only actual impartiality, but also the appearance of a detached impartiality."

Like statements of the principle as to the "appearance of justice," within the fair trial concept, are found in many other decisions and have now been codified in the new recusal statute,[6] which requires mandatory disqualification of a judge "in any proceed-

---

**5.** 28 U.S.C.A. § 144.

**6.** 28 U.S.C.A. § 455(a) and (b).

ing in which his impartiality *might reasonably be questioned*," or "where he was a personal bias or prejudice concerning a party." To say more will unduly lengthen this decision.

■ The judge's statement did not comport with the appearance of justice, and it cannot be said from the record alone that appellant received a fair trial. Accordingly, the conviction and sentence must be vacated.

In addition to his claim of judicial bias, the appellant contends that his conviction was the result of impermissible government misconduct, entrapment and selective prosecution. He argues that certain government documents—including those dealing with the so-called FBI COINTELPRO operations—will substantiate these allegations.

We find it unnecessary to decide this contention in view of our holding on the appearance of judicial bias. We feel that it is appropriate, however, to suggest to the district court that on remand the court should consider granting a limited, closely supervised discovery of the government documents the defendant requested to examine, if the district court should determine that the examination of these documents is essential to presentation of the defendant's defenses.

■ Although the government asserts that the COINTELPRO files contain no information relevant to Brown's prosecution under 15 U.S.C. § 902(e), the prosecution's *ex parte* determination of relevancy is not sufficient to dispose of the matter. *Kolod v. United States*, 1968, 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 962; *Alderman v. United States*, 1969, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176. The government's interest in the security of its files can be protected through an *in camera* examination of those documents the appellant asserts support his claim of improper prosecutorial activity. Such *in camera* examinations of evidence have been sanctioned by the Supreme Court in a variety of contexts. See *United States v. Nixon*, 1974, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (disclosure of tapes allegedly containing confidential Presidential communications); *Dennis v. United States*, 1966, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (disclosure of grand jury minutes subject to an *in camera* deletion of "extraneous material"); *Palermo v. United States*, 1959, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (whether the Jencks Act, 18 U.S.C. § 3500, requires disclosure of documents to the defense); *Roviaro v. United States*, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (disclosure of informant's identity). This Circuit, too, has repeatedly approved the use of *in camera* examinations as the means for resolving the conflict between a defendant's need for evidence and the government's claim of privilege based on the needs of public security. *United States v. Ross*, 5 Cir. 1975, 511 F.2d 757; *United States v. Sanchez*, 5 Cir. 1975, 508 F.2d 388; *Flanagan v. Henderson*, 5 Cir. 1974, 496 F.2d 1274; *United States v. Fanning*, 5 Cir. 1973, 477 F.2d 45, *reh. den'd* 1973, 477 F.2d 596, *cert. denied* 1973, 414 U.S. 1006, 94 S.Ct. 365, 38 L.Ed.2d 243, *reh. denied* 1974, 414 U.S. 1172.

The conviction and judgment are VACATED and the case is REVERSED and REMANDED for a new trial.