James Dean WALKER, Plaintiff,

v.

A. L. LOCKHART, Superintendent of the Arkansas Department of Corrections; Richard Earl Griffin, Floyd Johnson, Thomas H. Wortham, Jim Lindsey and Woodson Walker, Members of the Arkansas Board of Correction; Sergeant David Rosegrant of the Arkansas State Police; Ronald Dobbs, Warden of Cummins Prison Diagnostic Unit; Frank White, Governor of the State of Arkansas; Edmund G. Brown, Jr., Governor of the State of California; State of Arkansas and State of California, Defendants.

In the Matter of the Application of James Dean WALKER, Petitioner, for a Writ of Habeas Corpus to Inquire into the Cause of Detention of James Dean Walker

v.

Sergeant David ROSEGRANT of the Arkansas State Police; Ronald Dobbs, Warden of Cummins Prison Diagnostic Unit; and A. L. Lockhart, Superintendent of the Department of Correction, Respondents.

No. LR-C-81-280.

United States District Court,
E. D. Arkansas, W. D.

June 2, 1981.

Oscar Fendler, Blytheville, Ark., Bill W. Bristow, Jonesboro, Ark., for plaintiff.

Steve Clark, Atty. Gen., of Ark., Theodore Holder, Frederick K. Campbell, A. Carter Hardage, Asst. Attys. Gen., Little Rock, Ark., for defendants.

## ORDER

WOODS, District Judge.

Upon the plaintiff-petitioner's (hereinafter plaintiff) extradition from California to Arkansas, he filed a complaint alleging that the State of Arkansas was unable to provide him with a confinement and environment in the Arkansas penal institutions free from cruel and unusual punishment as required by the Eighth Amendment to the United States Constitution. Additionally, under Count I of the complaint, plaintiff alleged that the defendant, A. L. Lockhart, maliciously and intentionally placed the plaintiff in fear of his life and in doing so had violated his right to be free from cruel and unusual punishment. Pursuant to 42 U.S.C. § 1983, plaintiff seeks money damages for these alleged constitutional infringements, as well as an order of this court directing that his prison sentence be served outside the State of Arkansas.

Since the plaintiff's immediate safety was at issue, the Court held an expedited hearing on May 13, 1981. It was determined that, for the plaintiff's immediate safety pending final resolution of his complaint, the Pine Bluff Diagnostic Unit of the Arkansas Penal System was the only proper, safe place of detention for the plaintiff. Dr. Robert Powitzky, an Arkansas State Correction official assigned to the Pine Bluff Diagnostic Unit, testified that the plaintiff should not be returned to the general population of the Cummins Unit. Further, he testified that the Pine Bluff Diagnostic Unit was the only facility within the Arkansas Penal System wherein plaintiff could be safely incarcerated pending resolution of his complaint.

At the May 13 hearing, the Court advised the parties of a number of concerns regarding the remaining allegations of the plaintiff's complaint and directed that they submit briefs on these issues. These briefs have been submitted, and this matter has been set for trial on the merits on June 15, 1981. The subject matter of this order will be to inform the parties of the scope and boundaries of this June 15 trial.

## PLAINTIFF'S FIRST COUNT

As discussed immediately above, the May 13 hearing was designed to provide temporary relief for the plaintiff pending final resolution of his complaint. The trial on the merits will, of course, address the issue of whether or not the plaintiff's allegations under Count I can be sustained on a permanent basis. At this trial, the Court expects the State to explain the manner in which the plaintiff will be detained and whether or not the State would at any time be able to place the plaintiff in other presently existing institution other than the Pine Bluff Diagnostic Unit. The Court would, of course, caution the attorneys not to repeat testimony which was introduced at the May 13 hearing, as the Court will consider that testimony in its ruling at the June 15 hearing.

## PLAINTIFF'S SECOND COUNT

The plaintiff's second count alleges that he is the third-party beneficiary of a contract existing between the State of Arkansas and the State of California which should be specifically enforced in his favor. There has been a change in administration in the Governor's office since the alleged contract was entered into by the parties. Further, the parties presumably could mutually rescind the contract. Nevertheless while the Court has some difficulty with this theory, the plaintiff will be permitted to put on proof, if any, of this contract but directs the plaintiff to inform the court by June 8, 1981 as to whether or not this alleged contract is oral or written. If the contract is written, the June 8 communication directed above from counsel for the plaintiff to the Court should include a copy of the alleged contract.

## PLAINTIFF'S THIRD COUNT

The plaintiff's third count is in fact a petition for habeas corpus relief and seeks to have the Court grant the plaintiff a new trial. The plaintiff alleges:

a. That the presiding trial judge at his murder conviction, Judge William Kirby, was biased against the plaintiff.

b. That there was official misconduct in the plaintiff's trials in state court in that the North Little Rock Police Department allegedly withheld exculpatory evidence and witnesses from the plaintiff.

c. That prejudicial pre-trial publicity made it impossible for the plaintiff to receive a fair trial before a fair and impartial jury.

d. That the plaintiff's principal attorney was intimidated, threatened and consistently interfered with by the trial court, police officers and other officials in a manner that prevented him from adequately defending the plaintiff.

e. That there is newly discovered evidence that exonerates the plaintiff.

f. That the sum total of the various alleged defects in the plaintiff's state trial were so serious as to shock the conscience of the court into violating his constitutional rights to a fair trial.

g. That in the prosecution of his prior habeas corpus petition, his rights to due process were abridged when representatives of then Governor Winthrop Rockefeller allegedly induced him not to apply for a writ of certiorari to the United States Supreme Court subsequent to the ruling of the Circuit Court of Appeals for the Eighth Circuit denying him habeas relief.

It is the plaintiff's third count which caused the Court to express most of its concern at the May 13, 1981 hearing and which prompted the Court to direct the attorneys to file pre-trial briefs. Counsel for the plaintiff candidly admitted at the May 13 hearing that the factual matters underlying the plaintiff's current writ of habeas corpus are to a large extent the same factual matters asserted in the plaintiff's prior petition for writ of habeas corpus before Judge J. Smith Henley. *Walker v. Bishop*, 295 F.Supp. 767 (E.D.Ark.1967). However, plaintiff's counsel asserts that there has been an intervening change in the law which requires reconsideration of his previous habeas claims.

■ Plaintiff correctly argues that traditional notions of *res judicata* do not apply to habeas corpus proceedings. *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). However, this does not necessarily mean that successive habeas corpus petitions may be filed in an unbridled fashion. Congress in 28 U.S.C. § 2244 provided some guidelines for finality determinations in habeas proceedings:

(a) No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior

application for a writ of habeas corpus and the petition presents no new ground not heretofore presented and determined, and the judge or court is satisfied that the ends of justice will not be served by such inquiry.

■ Should controlling weight be given to the denial of the plaintiff's prior application for federal habeas corpus relief by Judge Henley, *Walker v. Bishop, supra,* as affirmed in an exhaustive opinion written by Judge Pat Mehaffy at 408 F.2d 1378 (8th Cir. 1969)? In resolving this issue the Court must determine (1) whether or not the same grounds are presented in the instant application as were presented in the prior application and determined adversely to the plaintiff, (2) whether the prior determination was on the merits, and (3) whether the ends of justice would not be served by reaching the merits of the instant application for habeas corpus relief. *Sanders v. U. S., supra* 373 U.S. at 15, 83 S.Ct. at 1077. With the exception of paragraphs (d), (e) and (g) of Count III of the plaintiff's complaint, the underlying facts relied upon by the plaintiff in the instant application for habeas relief are the same as those asserted in his prior application. Grounds (a), (b), (c) and (f) now asserted by the plaintiff are identical to those asserted in the prior application. The prior determination was on the merits and after an exhaustive hearing determined adversely to the plaintiff.

The plaintiff places particular emphasis on alleged misconduct of the trial judge, Judge William Kirby, and further argues that there has been an intervening change in the law which, pursuant to *Sanders v. United States, supra,* mandates that this court reconsider plaintiff's petition for habeas relief. The principal case relied upon by plaintiff is *United States v. Brown*, 539 F.2d 467 (5th Cir. 1976). Plaintiff asserts that this case represents an intervening change in the law regarding judicial bias which should result in a reconsideration of Judge Kirby's conduct. The Court does not so construe the *Brown* case. The case of *United States v. Brown* is unique to its own set of facts. Another important distinction

from the instant case is that in *Brown* a first application for a writ of habeas corpus was involved and not a successive application, as is now before the court. Whether or not one characterizes the examination of the trial judge's conduct as objective or subjective, the District Court and the Court of Appeals in the plaintiff's prior application for a writ of habeas corpus thoroughly examined the conduct of Judge Kirby, found that he was not biased, found that the plaintiff had not been prejudiced by having a trial before Judge Kirby and further found that he had been accorded a fair trial. In the Eighth Circuit opinion, *Walker v. Bishop, supra,* Judge Mehaffy stated at 1382:

> [T]he Supreme Court of Arkansas, which we highly respect, concluded that the trial court acted properly and even *generously* towards Walker in the course of the second trial, and that the judge exhibited no personal bias or prejudice to the jury. That court, among other things, noted that defendant was given seven months to prepare for the second trial, that his motion to be placed in the county jail during that time for the convenience of his counsel was granted as was what the Arkansas court characterized as defendant's "sweeping motion for production and private examination of all the tangible objects which were to be introduced by the State in evidence." That court, after canvassing the entire record, as do we, stated:
>
> > "We find from the record in this case that the trial court conducted the trial in an *exemplary* manner and without any bias or prejudice toward the accused." (Emphasis added.)

The legal tests applied by both the District Court and the Court of Appeals in the prior application for habeas relief by the plaintiff would be the same standards applied by this court, and the case of *United States v. Brown, supra* does not alter this analysis.

With regard to points (a), (b), (c) and (f), there is no new evidence, and there has been no intervening change in the law which would serve the ends of justice by reconsidering the merits of the plaintiff's subsequent habeas application. The following language from *United States ex rel. Townsend v. Twomey,* 452 F.2d 350, 355 (7th Cir. 1972) is directly in point:

> . . . while "the ends of justice" cannot be too finely particularized, two principal bases would be: (a) if factual issues are involved, the evidentiary hearing on the prior application was not full and fair and (b) if legal questions are involved there has been an intervening change in the law or there is some other justification for having failed to raise a crucial point or argument in the application.

Our analysis of the record does not indicate either that the first hearing was not full and fair or that there has been any intervening change in the law or other justification for having failed to raise a crucial point or argument in the prior application.

The plaintiff's fourth ground supporting his petition for writ of habeas corpus alleges that one of his principal attorneys was intimidated, threatened and consistently interfered with by the trial court, police officers and other officials such that he could not adequately defend petitioner. While intimidation of witnesses and an overall intimidating atmosphere was argued in the previous habeas proceeding, the specific allegation that one of the plaintiff's principal attorneys was interferred with was not raised. Should this ground have been raised in the prior proceeding? Certainly, in the interest of finality, it would have been the better practice to have raised this issue in the prior proceeding. Arguably, plaintiff's failure to do so is inexcusable under the terms of Rule 9(b) of the rules governing habeas corpus cases or an abuse of the writ under the terms of 28 U.S.C. § 2244(b). While the Court of Appeals commended counsel for plaintiff, including Mr. Worsham, ". . . for their zeal in their client's behalf, as it can be fairly said that they fought vigorously every inch of the way", this court feels that the particular allegations raised by the fourth ground of plaintiff's habeas corpus petition has not been heretofore raised. Further, at this

stage of the proceeding no demonstration has been made to the court that the plaintiff has abused the writ, acted inexcusably or that the State has been prejudiced by the failure of the plaintiff to raise this ground in the prior proceeding. Therefore, the Court will not apply the equitable doctrine of laches and will permit plaintiff to produce evidence in an attempt to support this allegation.

■ The fifth ground asserted by the plaintiff in support of his claim for habeas relief is "that there is newly discovered evidence that will cast serious doubts on Walker's guilt of the charges against him." By the very manner in which this ground is phrased, a new ground is asserted. Of course, as with the fourth ground discussed above, Rule 9(b) of the Federal Rules dealing with habeas corpus proceedings and subparagraph (b) of 28 U.S.C. § 2244 arguably should prevent the petitioner from proceeding with this ground. Further, the more appropriate forum for raising this ground would quite likely 'be in the State Circuit Court wherein the plaintiff was convicted. Candidly, the plaintiff has advised the Court that at the present time there is no legally admissible newly discovered evidence. At the trial on the merits, the plaintiff will be permitted to introduce evidence in an effort to support this ground. Of course, this must be, as termed by the petitioner's counsel, legally admissible evidence. Depending upon the nature of the evidence offered in support of this ground, the Court reserves the right to refer this portion of the habeas petition to State court for resolution.

The seventh ground asserted by the plaintiff in support of his request for habeas relief alleges that he was induced to drop his petition for certiorari before the United States Supreme Court on his prior habeas corpus proceeding which had been denied by the Court of Appeals as discussed *supra.* While this asserted ground for relief may be barred by laches, as provided in 28 U.S.C. § 2244(b) or Rule 9(b) of the Rules of Habeas Corpus Proceedings, the Court will permit the plaintiff to introduce any evidence supporting such allegation and will reserve its ruling with regard to laches.

■ With the exception of items (d), (e) and (g), the Court finds that the same grounds presented in this application were previously determined adversely to the petitioner on his prior application, the prior determination was on the merits, and the ends of justice would not be served by reaching the merits of this subsequent application. To hold otherwise, would put this Court in the position of reviewing a decision of its Court of Appeals. Judge Lumbard's opinion in *United States ex rel. Schnitzler v. Follette,* 406 F.2d 319, 321 (2d Cir. 1969) effectively articulates the rule which this court now relies upon:

Not only is it clear that under the *Sanders* standard the district court could have refused to entertain the second application for habeas corpus relief, *Nash v. Reincke,* 325 F.2d 310, 312 (2d Cir. 1963), but we hold that in light of the prior decision of this court the district court was required not to entertain the application.

While *res judicata* does not apply to successive habeas applications Judge Croake was bound to follow our prior decision, rendered upon a factual and legal background identical to that before the district court, under the common principle of *stare decisis.* In this case, as in all others, the district court is required to follow a binding precedent of a superior court, and it abused its discretion in declining to do so. Cf. *Port Authority Bondholders Protective Committee v. Port of New York Authority,* 387 F.2d 259, 262–263 n. 3 (2d Cir. 1967).

Petitioner's present application is, in effect, an effort to appeal this court's adverse ruling on his first petition. By entertaining this application the district court improperly functioned as a court of review over a judgment of its superior Court of Appeals. The adoption of such a role is particularly inappropriate in the area of federal habeas corpus jurisdiction over state prisoners, a branch of criminal jurisprudence which is badly in need of

some principles of finality. See *United States ex rel. McCann v. Thompson*, 144 F.2d 604, 606, 156 A.L.R. 240 (2d Cir. 1944).

See also *Brown v. Wainwright*, 576 F.2d 1148 (5th Cir. 1978) and *Sinclair v. Blackburn*, 599 F.2d 673 (5th Cir. 1979).

While no pre-trial conference will be scheduled in this matter, the parties are directed to file a response to the outline for pre-trial conference information sheet no later than June 8, 1981 as provided under Rule 21 of the Local Rules. Further the parties are directed to file findings of fact and conclusions of law with the Court no later than June 10, 1981. In accordance with the ruling of the court as set out above, the trial on the merits will proceed as scheduled on June 15, 1981.