**James Dean WALKER, Appellant,**

v.

**A. L. LOCKHART, Superintendent of the Arkansas Department of Corrections, Appellee.**

No. 81–1700.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 18, 1981.

Decided May 19, 1982.

See also, 514 F.Supp. 1347.

Bill W. Bristow, Seay & Bristow, Jonesboro, Ark., Oscar Fendler, Blytheville, Ark., Paul Halvonik, Halvonik & Halvonik, Berkeley, Cal., for appellant.

Steve Clark, Atty. Gen. by Theodore Holder, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Thomas M. Carpenter, Lessenberry & Carpenter, Little Rock, Ark., for American Civil Liberties Union.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

PER CURIAM.

James Dean Walker, an inmate in the Arkansas prison system, petitions this court for an order enjoining Arkansas prison officials from transferring him from protective custody in the Diagnostic Unit at Pine Bluff, Arkansas, to other conditions of confinement pending this court's ruling on the merits of Walker's appeal in his civil rights action against A. L. Lockhart, Superintendent of the Arkansas Department of Corrections. For the reasons outlined below, we grant the injunction pending appeal.

I. *Background.*

In 1975, Walker failed to return from a furlough to the Cummins Unit of the Arkansas Prison System, where he was serving a life sentence for first degree murder. Four years later, Walker was apprehended in California, and subsequently extradited to Arkansas. Upon his return, Walker filed an action against Lockhart, combining a claim under 42 U.S.C. § 1983 and a petition for a writ of habeas corpus. In his section 1983 claim, Walker contended that the State of Arkansas could not confine him within the Arkansas penal system without contravening the eighth amendment prohibition against cruel and unusual punishment. Because of the events that occurred

when he was a prisoner at the Cummins Unit, Walker alleged that his life would be endangered if he were forced to return to the general prison population. Walker requested an order directing that he serve the remainder of his sentence outside the Arkansas penal system, in either a federal penitentiary or a prison in another state.

Because Walker's immediate safety was at issue, the district court[1] held an expedited hearing, prior to the hearing on the merits of Walker's section 1983 claim and petition for a writ of habeas corpus. At that hearing, Dr. Robert Powitzky, an official of the Arkansas Department of Corrections, testified that the Pine Bluff Diagnostic Unit was the only facility within the Arkansas prison system in which the State could safely incarcerate Walker pending a ruling on the merits of his complaint. *Walker v. Lockhart,* 514 F.Supp. 1347, 1349 (E.D.Ark.1981). The court ordered that Walker should remain at the Diagnostic Unit until the court ruled on the merits of his claim.[2]

After a hearing on the merits, the district court dismissed Walker's section 1983 claim and his petition for a writ of habeas corpus. The district court's order left it to the discretion of Arkansas prison officials to provide for the safety of James Dean Walker within the Arkansas prison system. *Walker v. Lockhart,* 514 F.Supp. 1347 (E.D.Ark. 1981). Walker appealed to this court from that order.

When this court heard oral argument in Walker's appeal, Walker remained in administrative segregation at the Pine Bluff Diagnostic Unit by his own choice. At oral argument, the Assistant Attorney General representing Lockhart described the Pine

1. The Honorable Henry Woods, United States District Court for the Eastern District of Arkansas.

2. The district court cited the testimony of Dr. Robert Powitzky as the basis of its determination.

It was determined that, for the plaintiff's immediate safety pending final resolution of his complaint, the Pine Bluff Diagnostic Unit of the Arkansas Penal System was the only proper, safe place of detention for the plain-

tiff. Dr. Robert Powitzky, an Arkansas State Correction official assigned to the Pine Bluff Diagnostic Unit, testified that the plaintiff should not be returned to the general population of the Cummins Unit. Further, he testified that the Pine Bluff Diagnostic Unit was the only facility within the Arkansas Penal System wherein plaintiff could be safely incarcerated pending resolution of his complaint. [*Walker v. Lockhart,* 514 F.Supp. 1347, 1349 (E.D.Ark.1981).]

Bluff Diagnostic Unit as a facility designed for "intake purposes," from which inmates are transferred to one of the state's penal institutions. He also indicated that the State would not return Walker to the Cummins Unit, but that it had a specific plan to phase Walker back into the general prison population. After his removal from administrative segregation, Walker would be transferred to a cell block of approximately eight cells. Walker would receive a work assignment, in which he would work with two or three other inmates under the supervision of two guards at all times.

The Arkansas prison authorities have apparently begun to implement this plan. Walker received an assignment to a work detail beginning April 12, 1982. Walker refused to accept the work assignment because he fears for his safety if he leaves administrative segregation. For his refusal to accept the work assignment, prison authorities placed Walker in punitive isolation.

Walker now petitions this court for a protective order requiring the Arkansas prison authorities to keep him in administrative segregation at the Pine Bluff Diagnostic Unit and for other appropriate relief pending a determination of the merits of his appeal.

## II. *Discussion.*

Walker's request for a protective order amounts to an application for an injunction pending appeal. Rule 8 of the Federal Rules of Appellate Procedure directs that such a motion should ordinarily be made in the first instance in the district court. The rule states, however, that

[a] motion for such relief may be made to the court of appeals or to a judge thereof, but the motion shall show that application to the district court for the relief sought is not practicable, or that the district court has denied an application, or has failed to afford the relief which the applicant requested[.] [Fed.R.App.P. 8.]

■ In dismissing Walker's section 1983 claim, the district court found that Walker was safe within the Arkansas prison sys-

tem, and that under the State's plan for him he would continue to be safe in the foreseeable future. The court stated: " * * * I am unwilling to interfere with the operation of the Arkansas prison in respect to Mr. Walker." Record at 505, *Walker v. Lockhart*, 514 F.Supp. 1347 (1981). In these circumstances, we think it unnecessary for Walker to apply first to the district court for injunctive relief under Rule 8, Fed.R. App.P. Moreover, because the appeal in this case is under submission, Walker properly requested such relief from this court.

■ In ruling on a request for an injunction pending appeal, the court must engage in the same inquiry as when it reviews the grant or denial of a preliminary injunction. *Hodges v. Brown*, 500 F.Supp. 25 (E.D.Pa. 1980), *aff'd*, 649 F.2d 859 (3d Cir.), *cert. denied*, 454 U.S. 820, 102 S.Ct. 101, 70 L.Ed.2d 91 (1981); *see also Woe v. Nebraska State Department of Public Welfare*, 598 F.2d 1146, 1147 (8th Cir. 1979) (Lay, J., dissenting); *Chicago Stadium Corp. v. Scallen*, 530 F.2d 204, 207 n.2 (8th Cir. 1976); *Reserve Mining Co. v. United States*, 498 F.2d 1073, 1076–77 (8th Cir. 1974). In each case, the movant asks the court to maintain the status quo until the court rules on the merits of the legal action to which the movant is a party.

In *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (1981) (*en banc*), this court outlined the factors to be considered in evaluating a request for a preliminary injunction.

Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. [*Dataphase Systems, Inc. v. C L Systems, Inc., supra*, 640 F.2d at 113.]

Because of the equitable nature of the relief requested, however, the court maintains a flexible approach in applying the *Dataphase* factors and balancing the equities between the parties.

The merits of the appeal before this court involve substantial questions of law which remain to be resolved. Walker's assertion that acceptance of a work assignment bringing him into contact with the general prison population would subject him to risk of great bodily harm is not without evidentiary support. The State has kept Walker at the Pine Bluff Diagnostic Unit since his return from California in 1981. The relief now requested by Walker will not impose an undue burden on the State of Arkansas. Any burden to the State in keeping Walker in administrative segregation is substantially outweighed by the threat of harm to Walker.

In *Dataphase*, the court indicated that "where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less." *Dataphase Systems, Inc. v. C L Systems, Inc., supra*, 640 F.2d at 113. Therefore, we need not engage in detailed analysis of Walker's probability of success on the merits.

In considering an application for a preliminary injunction, this court has stated that, at bottom, the request

> raised the question whether or not there were substantial questions of fact and law for determination and whether they were of such a substantial character as to require the preservation of the status quo until those questions could be determined. [*Chicago, B & Q Railroad v. Chicago Great Western Railroad*, 190 F.2d 361, 363–64 (8th Cir. 1951).]

We believe that the equities of this case require the court to intervene to preserve the status quo pending the outcome of Walker's appeal.

Consistent with this opinion, we have heretofore entered an order on May 4, 1982, directing appellee Lockhart to maintain James Dean Walker's conditions of confinement as they existed on June 15, 1981.