851 F.Supp. 1399 (1994)
In re WORKERS' COMPENSATION REFUND.
Nos. 4-93-CV-515, 4-93-CV-516, 4-93-CV-555 and 4-93-CV-577.
United States District Court, D. Minnesota, Fourth Division.
April 20, 1994.
*1400 James Thomas Martin, Dan Thomas Ryerson, Gislason Martin & Varpness, Edina, MN, for plaintiff.
Carolyn Page Ham, MN Atty. Gen., St. Paul, MN, Jocelyn Furtwangler Olson, MN Atty. Gen., St. Paul, MN, for John B. Lennes, Jr., James E. Ulland.
John F. Stone, Oppenheimer Wolff & Donnelly, Minneapolis, MN, for Workers' Compensation Reinsurance Ass'n.
Karl Craig Wildfang, Wood Robertson Foster, Jr., Anne Kathryn Lawler, Siegel Brill Greupner & Duffy, Minneapolis, MN, for Care Providers of Minnesota, Inc., Health Dimensions, Inc., Medcare Associates, North Cities Health Care, Inc., Walker Methodist, Inc.
Elizabeth L. Taylor, John Frederick Beukema, John Dwyer French, Faegre & Benson, Minneapolis, MN, for St. Paul Fire & Marine Ins. Co., Tri-State Ins. Co. of Minnesota, Aetna Cas. and Sur. Co., Fireman's Fund Ins. Co., Great American Ins. Co., Ins. Co. of North America, Home Ins. Co., American Mfrs. Mut. Ins. Co., American Motorists Ins. Co., American Protection Ins. Co., Lumbermens Mut. Cas. Co., Royal Indem. Comp., U.S. Fidelity & Guar. Co., Zurich Ins. Co. U.S. Branch.
James Robert Safley, Annamarie Audrey Daley, Randall M. Tietjen, Robins Kaplan Miller & Ciresi, Minneapolis, MN, for Minnesota Mut. Fire and Cas., Employers Ins. of Wausau, A Mut. Co., Farmland Mut. Ins. Co., Federated Mut. Ins. Co., Liberty Mut. *1401 Ins. Co., Liberty Ins. Corp., Liberty Mut. Fire Ins. Co., plaintiff Lumbermen's Underwriting Alliance, Nationwide Mut. Ins. Co., Nationwide Mut. Fire Ins. Co., Wausau Underwriters Ins. Co.
Daniel Patrick O'Keefe, Sonja Gail Lemmer, Dorsey & Whitney, Minneapolis, MN, for Continental Cas. Co., Continental Ins. Co., Transportation Ins. Co., National Fire Ins. Co., American Cas. Co. of Reading, PA, Valley Forge Ins. Co.

ORDER
ROSENBAUM, District Judge.
Defendants Lennes and Ulland seek a stay pending appeal of this Court's February 11, 1994, Order, pursuant to Rule 62(c), Federal Rules of Civil Procedure (Fed.R.Civ.P.).[1] Plaintiffs oppose a stay, or alternatively, request that any stay be conditioned on the defendants' posting of a bond. Original and supplemental briefs have been submitted by both sides. Argument was heard on April 11, 1994. For the reasons set forth herein, defendants' motion for a stay is conditionally granted.

I. Analysis

The February 11, 1994, Order directs the distribution of approximately $246 million.[2] This sum, derived from the surplus accrued in the Workers' Compensation Reinsurance Association ("WCRA") reinsurance fund, is to be divided among the plaintiffs and other Minnesota workers' compensation insurers. Defendants ask that these funds remain in WCRA's hands until the February 11, 1994, decision is reviewed on appeal.[3]
Four factors weigh in the Court's determination to grant a stay: (1) whether the applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the opposing party; and (4) the public interest. Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987); Walker v. Lockhart, 678 F.2d 68, 70 (8th Cir.1982). After considering these factors, the Court finds that a stay pending appeal is appropriate if, and only if, a bond is emplaced by the defendants.

A. Defendants' Likelihood of Success on the Merits

The Court, perhaps not surprisingly, believes the February 11, 1994, Order to be a proper declaration of the parties' constitutional rights. A district court, however, may properly stay its order pending appeal where such order involves the determination of "substantial and novel legal questions." Sweeney v. Bond, 519 F.Supp. 124, 133 (E.D.Mo.1981), aff'd, 669 F.2d 542 (8th Cir.), cert. denied, 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982). See also Walker v. Lockhart, 678 F.2d 68, 71 (quoting Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir.1981)) (where a movant "has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less"). The Court recognizes that the question presented in this matter is not wholly without doubt. Therefore, the Court finds that this factor narrowly supports a stay.

B. Irreparable Injury to the Applicant

Absent a stay, the plaintiffs and other Minnesota workers' compensation insurers will share approximately $246 million in excess reinsurance premiums. The defendants argue that, should the funds be disbursed, there is a risk that one or more of the recipient companies could become insolvent. In such a case, that company's distribution could be irretrievably lost. The plaintiffs *1402 respond that the State, having access to the financial records of the plaintiffs and the other workers' compensation insurance companies, is regularly apprised of each company's financial condition.
It is clear that compelling this distribution will take almost a quarter of a billion dollars out of the hands of WCRA. The parties agree that over 400 insurance companies will share in the distribution. It is obvious that in the event of reversal, there exists some risk that one or more of these companies will be unable to repay its distribution and replenish the WCRA fund.
Having recognized the existence of this risk, the Court discounts it. Each of the insurance companies is licensed to do business in the State of Minnesota. At argument, each side agreed that the Minnesota Department of Commerce, which is charged with regulating the insurance industry, regularly receives state-acceptable assurances of the stability of these insurers. From this the Court derives an assurance that, while there is not a "zero" risk, there is a high probability that the distributed sums could be returned to WCRA should this Court be reversed. This factor weighs against a stay.

C. Injury to the Opposing Party[4]
A stay would deprive the plaintiffs of the use of the excess reinsurance funds during the lengthy course of an appeal to the Eighth Circuit or beyond. The plaintiffs argue that a stay will cost them a significant return on investment due to the "spread" between their customary return on investment and the return WCRA currently realizes on the excess premiums.
Moreover, according to the plaintiffs, a stay will deprive the recipient insurance companies of an increase in capital which would allow them to expand their underwriting activities. It is from these underwriting activities that the plaintiffs derive premium income. Finally, the plaintiffs contend that a stay will necessarily diminish their capital base and weaken their financial standing with regulators, rating agencies, and investors.
Defendants respond, first, that the current rate of return is the result of a stipulation between the parties as to the investment of the funds.[5] Second, they dispute the plaintiffs' loss of premium dollars. Defendants maintain that plaintiffs would not be able to consider their portion of the distribution as available income because the possibility of reversal makes the distribution a contingent fund. Instead, in defendants' view, plaintiffs would be required to invest such funds in a conservative manner pending a decision on appeal. Therefore, in the defendants' view, any loss from a stay is either fictitious, conjectural, or speculative.
The Court rejects the defendants' arguments. Even if the February 11, 1994, Order is reversed, which is not at all a certainty, the recipient insurance companies would enjoy financial benefits from this sum. While the amount of plaintiffs' loss is uncertain, it is clear that plaintiffs will suffer a real loss of capital with its attendant benefits. The Court, having already determined that there is a substantial likelihood that the distributed sum would be recovered, finds that the balance of the harm weighs against a stay.

D. Public Interest

The final factor is the public interest. According to the defendants, the Minnesota legislature expressed the public's interest when it enacted a statute which distributed the surplus funds to the insured employers. The defendants' concerns for the risk of loss of these funds has been discussed above. The defendants then argue that the State will incur a significant expense if it must recoup monies from 400 workers' compensation insurers. The Court rejects this argument.
The February 11, 1994, Order determined that Minnesota Statutes Chapter 361 contravened *1403 the United States Constitution, the ultimate expression of the nation's public policy. In reliance on that analysis, the Court finds that the public policy factor counsels against a stay.

E. Bond Requirement

Plaintiffs argue that, should the Court grant a stay, a bond of at least $45 million is required to cover the plaintiffs' anticipated losses pending appeal. The defendants reply that any bond required by this Court would violate the Eleventh Amendment to the United States Constitution.
The Eleventh Amendment grants the states immunity from any federally-imposed retroactive monetary relief. See Hutto v. Finney, 437 U.S. 678, 690-91, 98 S.Ct. 2565, 2573-74, 57 L.Ed.2d 522 (1978); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Therefore, absent waiver or consent by a state, a federal court's remedial power is limited to prospective injunctive relief. Id. But the Supreme Court has recognized that the distinction between retroactive and prospective relief "will not in many instances be that between day and night." Edelman, 415 U.S. at 667, 94 S.Ct. at 1357. "The line between retroactive and prospective relief cannot be so rigid that it defeats the effective enforcement of prospective relief." Hutto, 437 U.S. at 690, 98 S.Ct. at 2573.[6]
The Court finds that the requirement of a bond is ancillary to the Court's power to direct the distribution of the WCRA funds. The defendants have chosen to appeal this Court's Order. Such a step, of course, may be taken without any leave or gesture by the Court. But here, they have elected to ask for a stay, a step beyond their simple appeal. This is a voluntary act on the State's part. The Court has determined that this State-sought stay would injure the plaintiffs. As a result, the Court finds that a bond would prospectively protect the plaintiffs against that injury.
The defendants maintain that plaintiffs' recovery on the bond would necessarily involve an award of retroactive relief. In the Court's view, however, any such recovery would "not [be] measured in terms of a monetary loss resulting from a past breach of a legal duty." Edelman, 415 U.S. at 668, 94 S.Ct. at 1358. Rather, recovery on the bond would merely be incident to the defendants' appeal and election to seek a stay.

II. Conclusion

In sum, one of the factors supports a stay, and three of the factors oppose a stay. The question is not, of course, without doubt, and either course poses a risk to one side or another. The Court, therefore, declines a wooden application of the balancing test, and finds it appropriate to grant a conditional stay. Therefore, in the event the defendants wish to stay the Order of February 11, 1994, they are required to post a bond in the amount of $14,750,000.[7] A stay will become effective upon the filing of such bond.
Accordingly, based on the files, records, and proceedings herein, IT IS ORDERED that:
1. Defendants' motion for a stay pending appeal is granted if, and only if, defendants post a bond in the amount of $14,750,000 with the Clerk of this Court on or before May 4, 1994.
*1404 2. In the event such a bond is not posted by said date, the defendants' motion for a stay is denied.
NOTES
[1] Rule 62(c), Fed.R.Civ.P., provides as follows:

When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of an appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.
[2] See In re Workers Compensation Refund, 842 F.Supp. 1211 (D.Minn.1994).
[3] Considering the substantial sums involved, it appears likely that, regardless of the outcome in the Court of Appeals for the Eighth Circuit, review will be sought in the Supreme Court of the United States. Such a step could well take over two years from the date of this Court's Order.
[4] This issue has substantial bearing not only on the question of a stay but also on the question of the requirement of a bond.
[5] The funds are currently invested in a money market fund. The parties appear to be willing to stipulate to a shift of investment which will reflect the increase in the prevailing rates of interest. In the event the defendants post a bond and effectuate a stay, as provided by this Order, the Court will permit such a reinvestment.
[6] For instance, in Edelman, the cost of compliance with a prospective federal court order was considered to be "ancillary" to the court's order. Edelman, 415 U.S. at 668, 94 S.Ct. at 1358. In Hutto, the Supreme Court reasoned:

In exercising their prospective powers under Ex parte Young and Edelman v. Jordan, federal courts are not reduced to issuing injunctions against state officers and hoping for compliance. Once issued, an injunction may be enforced. Many of the court's most effective weapons involve financial penalties.... The ... power to impose a fine is properly treated as ancillary to the federal court's power to impose injunctive relief.
Hutto, 437 U.S. at 690, 98 S.Ct. at 2573. The Hutto Court then determined that the award of attorney's fees against a state did not violate the Eleventh Amendment. The fact that the award had a compensatory effect did not dissuade the Court, because compensation was not the sole motive for the award. Id. at 691, 98 S.Ct. at 2574.
[7] This sum is equal to three percent of the sum to be distributed for each year of the two-year appeal.