RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0337P (6th Cir.)
File Name: 02a0337p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

PHILIP D. OVERSTREET,
　　　　*Plaintiff-Appellant,*

　　　　*v.*

LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT,
　　　　*Defendant-Appellee.*

No. 00-6635

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 00-00460—Karl S. Forester, Chief District Judge.

Argued: June 11, 2002

Decided and Filed: September 30, 2002

Before: KEITH and DAUGHTREY, Circuit Judges;
MARBLEY, District Judge.

———————————

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

1

———————————

**COUNSEL**

**ARGUED:**   James M. Morris, MORRIS & MORRIS, Lexington, Kentucky, for Appellant.  Terry Sellars, HENRY, WATZ, GARDNER, SELLARS & GARDNER, Lexington, Kentucky, for Appellee.  **ON BRIEF:**  James M. Morris, MORRIS & MORRIS, Lexington, Kentucky, for Appellant. Terry Sellars, HENRY, WATZ, GARDNER, SELLARS & GARDNER, Lexington, Kentucky, for Appellee.

———————————

**OPINION**

———————————

ALGENON L. MARBLEY, District Judge.   Plaintiff-Appellant, Philip D. Overstreet, appeals the district court's order denying his motion for a "temporary injunction"[1] to prohibit his employer, a governmental entity, from mandating public disclosure of real estate holdings by certain department employees and their family members.  Mr. Overstreet assigns error to the district court's ruling denying the motion for a temporary injunction based on that court's finding that Mr. Overstreet is unlikely to succeed on the merits of his case. This Court's appellate jurisdiction is proper under 28 U.S.C. § 1292(a)(1).

Based on the following analysis, the Court **AFFIRMS** the ruling of the district court.

---

[1]Although Plaintiff-Appellant styled his motion as one for a "temporary injunction," the Federal Rules of Civil Procedure do not provide for a "temporary injunction."   Therefore, the district court construed Plaintiff-Appellant's motion as a motion for a temporary restraining order, pursuant to Fed. R. Civ. P. 65(b). On appeal, however, the parties have treated the motion as one for a preliminary injunction, pursuant to Fed. R. Civ. P. 65(a).

## I. BACKGROUND

### A. Factual Background

Plaintiff-Appellant, Philip D. Overstreet, is employed by Defendant-Appellee, the Lexington-Fayette Urban County Government ("LFUCG"), in its Division of Engineering. Mr. Overstreet describes his job duties as primarily consisting of plotting map coordinates as a computer operator.

On October 16, 2000, the LFUCG issued a Real Property Disclosure Policy ("Policy"). The stated purposes of the Policy were to promote public confidence in the integrity of the local government in Fayette County, Kentucky, and to avoid the perception of a conflict between government employees' private interests and their public duties. Specifically, the Policy stated that its purposes were, *inter alia*:

> . . . to prevent actual or perceived conflicts by officers and employees of the [LFUCG], . . . to insure that housing in Fayette County is safe, sanitary, and habitable . . . and to unify the existing policies and procedures dealing with conflicts of interest of inspectors in the Division of Code Enforcement, Division of Building Inspection, and the Fire Prevention Bureau.

The Policy applies to employees in the LFUCG's Divisions of Code Enforcement, Building Inspection, Planning, Engineering, and the LFUCG's Fire Prevention Bureau, and their immediate families. The term "immediate families" is defined to include the employee's "spouse, unemancipated child residing in [the] household, or a person claimed by [the employee or the employee's spouse] as a dependent for tax purposes." The Policy prohibits employees in certain divisions, such as Code Enforcement, from owning real property in Fayette County, other than property in which those employees reside. The Policy permits ownership of real property by employees in other divisions, such as the Division of Engineering, but requires employees who do own real

property to disclose certain information about their ownership.

Pursuant to the Policy, employees who are allowed to own real property but are required to disclose information about such property must complete a form entitled, "Disclosure of Real Property and Business Interests" ("Disclosure Form"). Section I of the Disclosure Form requires the employee to list the addresses and owners of record for all real estate in Fayette County in which the employee or a member of his immediate family has an interest. The employee is also required to list the names of other individuals who have an interest in the property, and to indicate the type of property. Section II of the form requires the employee to list the names and addresses of any business[2] owning property in Fayette County in which the employee or a member of his immediate family has an ownership interest that exceeds the lesser of ten percent or five thousand dollars in value. The employee must specify the type of business and provide a general description of the business, and also must list the names of customers who do business with the employee's division. Section III of the form requires the employee to list the names, addresses, and owners of record for all property that the employee or a member of his immediate family manages or of which he oversees the management or maintenance in Fayette County. The employee is also required to list the addresses and owners of record for any businesses that manage or oversee the management or maintenance of any real property in Fayette County in which the employee or a member of his immediate family has an ownership interest as described in Section II. Finally, the Disclosure Form states that if the employee or a member of his immediate family acquires, obtains, inherits,

---

[2] "Business" is defined as "any corporation, partnership, limited liability company, sole proprietorship, firm, enterprise, franchise, association, organization, self-employed individual, holding company, joint stock company, receivership, trust, professional service corporation or limited liability company, or any legal entity through which business is conducted for profit."

would be violated by the denial of the injunction. The Court finds, however, that the public interest lies with the denial of Mr. Overstreet's request for an injunction. First, while the public clearly has interest in vindicating constitutional rights, it is unlikely that Mr. Overstreet can demonstrate that any constitutional rights are implicated on these facts. Second, the public interest lies in promoting public confidence in the integrity of local government and in avoiding the perception of a conflict of interest between government employees' private interests and their public duties. Both of these interests are furthered by the denial of the injunction sought by Plaintiff-Appellant.

Therefore, the Court finds that the public interest lies in the denial of Plaintiff-Appellant's request for an injunction.

### V.  CONCLUSION

For all of the foregoing reasons, this Court concludes that the district court did not err in its denial of Plaintiff-Appellant's Motion for a Temporary Injunction, and, therefore, **AFFIRMS** the district court's ruling.

from temporary unemployment pending arbitration). Indeed, "[t]he loss of a job is quintessentially reparable by money damages." *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995).

Therefore, the Court finds that Plaintiff-Appellant has not demonstrated that he will suffer irreparable harm if the preliminary injunction does not issue.

### C.  Substantial Harm to Others

Although Mr. Overstreet contends that the granting of a preliminary injunction could not possibly harm the LFUCG, the Court finds, to the contrary, that the issuance of an injunction is likely to cause the LFUCG substantial harm. The Policy originated because of a widespread public belief of on-going corruption at the LFUCG, arising from a conflict of interest between the employees' public duties and their personal real estate holdings.  To avoid such a public perception, the LFUCG must be able to demonstrate that employees who can influence real estate development within Fayette County are being held accountable for their personal interests.   Such employees include employees in the Engineering Division, such as Mr. Overstreet, who may get advance notice of the LFUCG's interest in acquiring real property.  If the LFUCG is unable to hold its employees accountable for the real estate that they own, then that negative public opinion of the local government may once again pervade the community. In short, an injunction would harm the LFUCG because it would undermine public confidence in the local government.

Therefore, the Court finds that the issuance of a preliminary injunction is likely to cause substantial harm to others.

### D.  Public Interest

Mr. Overstreet contends that the public interest lies with the granting of the injunction because the public has a strong interest in protecting constitutional rights, which he maintains

is gifted, or is otherwise conveyed an interest in real property in Fayette County, or an ownership interest in a business that owns real estate in Fayette County, or starts to manage or maintain property or acquires an ownership interest in such a business, the employee must report the change in status to the LFUCG within twenty working days.

In late October 2000, the LFUCG presented the Disclosure Form to Mr. Overstreet with specific instructions that the form was to be filed by November 1, 2000.  Rather than complete the form, Mr. Overstreet submitted a Notarized Disclosure Statement, which read:

> To the extent that this information is on record at the Fayette County Clerk's Office and the PVA Office, the requested information is public record and can be obtained through those offices.  Any information as it pertains to my immediate family is an invasion of their privacy and requires me to verify what they own, something I cannot do.   To the extent that this information is also available through the offices of the Fayette County Clerk and the PVA Office, said information is public record.

On November 22, 2000, the LFUCG issued a written reprimand to Mr. Overstreet for insubordination, and advised him that the failure to submit a properly completed Disclosure Form by 5:00 p.m. on November 29, 2000 would result in a suspension without pay.  Following the issuance of the reprimand, Mr. Overstreet and his counsel requested that the LFUCG grant an extension of the deadline until it provided Mr. Overstreet with the legal basis for its entitlement to the information requested in the Disclosure Form.  The LFUCG did not respond to this request, and Mr. Overstreet failed to submit the Disclosure Form on or before November 29, 2000. Based upon his failure to submit the required form, the LFUCG suspended Mr. Overstreet without pay for seven days, and advised him that his failure to submit the form by

December 11, 2000 would result in the filing of administrative charges seeking his dismissal.

## B.  Procedural History

On November 29, 2000, Mr. Overstreet filed a Complaint with the district court in the Eastern District of Kentucky alleging the following claims: (1) a violation of the Third, Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution based on an infringement of Mr. Overstreet's right to privacy; (2) a violation of the Fourth Amendment based on an unreasonable search; (3) a violation of the Fourteenth Amendment based on the fact that the Real Estate Disclosure policy is impermissibly vague; (4) a violation of the Fourteenth Amendment based on an infringement of Mr. Overstreet's right to substantive due process; and (5) a violation of the Fourteenth Amendment based on an infringement of Mr. Overstreet's right to equal protection.  He filed his Complaint on behalf of himself and all former, current, and future officers and employees of the LFUCG Divisions of Code Enforcement, Building Inspection, Planning, Engineering, and the Fire Prevention Bureau, and their immediate families.  On that same day, Mr. Overstreet also filed a Motion for a Temporary Injunction, which the district court treated as a Motion for a Temporary Restraining Order.

The district court held a hearing on Mr. Overstreet's motion on November 30, 2000.  On December 1, 2000, the district court entered an order denying Mr. Overstreet's Motion for a Temporary Injunction.  Mr. Overstreet filed a Notice of Appeal from that order on December 5, 2000.  At the same time, he also filed a Motion for Temporary Injunction Pending Appeal, both with the district court and with this Court.  On December 8, 2000, both courts ruled on the motion. The district court denied Mr. Overstreet's Motion for a Temporary Injunction Pending Appeal.  This Court, per Chief Judge Martin, however, granted Mr. Overstreet's Motion in part, and enjoined Defendant-Appellee from

(recognizing that the loss of First Amendment rights, for even a minimal period of time, constitutes irreparable harm) (citations omitted); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992) (holding that plaintiffs may establish irreparable harm based on an alleged violation of their Fourth Amendment rights); *McDonell v. Hunter*, 746 F.2d 785, 787 (8th Cir. 1984) (finding that a violation of privacy constitutes an irreparable harm).

Plaintiff-Appellant contends that he has demonstrated irreparable harm because Defendant-Appellee's disclosure requirement violates his Fourth and Fourteenth Amendment rights.  He also claims that, absent the issuance of an injunction, he will suffer irreparable harm because he will be required to choose between disclosing certain personal information and being terminated from his employment.

The Court has already discussed the fact that it is unlikely that Mr. Overstreet will be able to demonstrate that he has a cognizable constitutional claim.  Thus, his argument that he is entitled to a presumption of irreparable harm based on the alleged constitutional violation is without merit.  The Court must, therefore, examine whether Mr. Overstreet has met his burden of demonstrating irreparable harm based on the fact that he faces the loss of his employment for his failure to complete and submit the Disclosure Form.

The Court concludes that Mr. Overstreet will not suffer irreparable harm by virtue of the fact that he may lose his job while this litigation is pending.  The fact that an individual may lose his income for some extended period of time does not result in irreparable harm, as income wrongly withheld may be recovered through monetary damages in the form of back pay.  *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (finding that "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury"); *see Aluminum Workers Int'l Union, AFL-CIO, Local Union No. 215 v. Consol. Aluminum Corp.*, 696 F.2d 437, 444 (6th Cir. 1982) (finding that employees did not suffer irreparable harm

Appellant's vagueness arguments are not properly before this Court. "It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice." *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 143 (6th Cir. 1997) (citing *Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 397 (6th Cir. 1993)); *see White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990) ("This court will not decide issues or claims not litigated before the district court."). Although Mr. Overstreet referred to the vagueness of the Policy in his Complaint, he failed to argue that issue before the district court, either in his motions or at oral argument. Furthermore, he failed to raise the issue before this Court until he filed his reply brief. An argument raised for the first time in a reply brief will not be considered by this Court. *Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986) (specifying that the application of this rule is "particularly appropriate when the issue raised for the first time in reply is based largely on the facts and circumstances of the case"). Particularly here, where the facts relied upon were presented neither to the district court nor to this Court until Plaintiff-Appellant filed his reply, it would be improper for the Court to find that the district court erred in its failure to consider this newly-developed vagueness argument.

For all of the foregoing reasons, the Court finds that the district court did not err in its conclusion that Plaintiff-Appellant is unlikely to succeed on the merits of his claim.

### B. Irreparable Harm

A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). Courts have also held that a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights. *See, e.g., Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)

initiating administrative charges for Mr. Overstreet's dismissal in response to his refusal to complete, sign, and submit the Disclosure Form, pending this appeal.

## II.  PRELIMINARY ISSUES

### A.  Jurisdiction

Mr. Overstreet filed a motion for a "temporary injunction" with the district court. Because the Federal Rules of Civil Procedure do not recognize the existence of a "temporary injunction," the district court treated the motion as a motion for a temporary restraining order.

A district court's denial of a motion for a temporary restraining order generally is not appealable. *Wilson v. Wilkinson*, 28 Fed. Appx. 465, 465, 2002 WL 123580, at *1 (6th Cir. Jan. 28, 2002) (citing *Office of Pers. Mgmt. v. Am. Fed'n of Gov't Employees, AFL-CIO*, 473 U.S. 1301, 1304-06 (1985) and *Bd. of Governors of Fed. Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 1000 (5th Cir.1994)). Such a ruling is appealable, however, if it is tantamount to a ruling on a preliminary injunction. *Id.* at 466 (citing *Manbourne, Inc. v. Conrad*, 796 F.2d 884, 887 n.3 (7th Cir.1986)).

This Court finds that Plaintiff-Appellant's Motion for a Temporary Injunction is tantamount to a motion for a preliminary injunction. Although the district court treated the motion as one for a temporary restraining order, both parties have treated the motion, and the district court's ruling thereon, as a motion for a preliminary injunction. Indeed, in their respective pleadings, the parties set forth, and base their arguments upon, the elements that must be shown for a court to grant a preliminary injunction. Furthermore, the district court treated Plaintiff-Appellant's Motion for Temporary Injunction Pending Appeal, styled in essentially the same manner as the original motion, as a motion for a preliminary injunction pending appeal.

Therefore, the Court construes Plaintiff-Appellant's Motion for a Temporary Injunction and the district court's ruling thereon as a motion for a preliminary injunction, properly postured for review by this Court.

## B. Motion for a Temporary Injunction Pending Appeal

On December 5, 2000, Plaintiff-Appellant filed a Motion for a Temporary Injunction Pending Appeal with this Court. On December 8, 2000, this Court, per Chief Judge Martin, granted that motion in part, and enjoined Defendant-Appellee from initiating administrative charges for Mr. Overstreet's dismissal in response to his refusal to complete, sign, and submit the Disclosure Form, pending this appeal.[3]   Mr. Overstreet now contends that this panel should simply extend the life of the December 8, 2000 order because Chief Judge Martin has already ruled on the merits of Plaintiff-Appellant's claims.

This Court has the power to grant an injunction pending appeal to prevent irreparable harm to the party requesting such relief during the pendency of the appeal. *Eastern Greyhound Lines v. Fusco*, 310 F.2d 632, 634 (6th Cir. 1962) (concluding that the authority to grant an injunction pending appeal is a "necessary incident" to the Court's power to issue writs to protect appellate jurisdiction under 28 U.S.C. § 1651) (citation omitted).  In granting such an injunction, the Court is to engage in the same analysis that it does in reviewing the grant or denial of a motion for a preliminary injunction. *Walker v. Lockhart*, 678 F.2d 68, 70 (8th Cir. 1982) (reasoning that the same analysis is appropriate because, in seeking both motions, the movant is requesting that the court issue an order to maintain the *status quo* until the court rules on the merits of the case).

---

**3**Plaintiff-Appellant's motion was granted in part, rather than in its entirety, because the ruling applied only to Plaintiff-Appellant, and not to the other employees on whose behalf Mr. Overstreet sought the temporary injunctive relief.

Disclosure Form is likely to be found reasonable, and, therefore, in compliance with the strictures of the Fourth Amendment.  As discussed above with reference to Mr. Overstreet's right to privacy claim, the district court is likely to conclude that the Policy and Disclosure Form are reasonable in light of the LFUCG's interests in preventing corruption and the appearance of impropriety when weighed against Mr. Overstreet's limited expectation of privacy in information regarding the real property that he and members of his immediate family own.  Significantly, the LFUCG has limited the application of the Policy to employees in those departments that may have access to privileged information, and may use their professional roles to their own personal advantage.

Therefore, the district court did not err in its conclusion that Mr. Overstreet is unlikely to prevail on the merits of his claim that the LFUCG Policy and Disclosure Form constitute an unreasonable search in violation of the Fourth Amendment.

### 3. Vagueness

Though the issue was not raised by Plaintiff-Appellant in his final brief submitted to this Court, Defendant-Appellee, in its brief, argued that the Real Property Disclosure Policy is not impermissibly vague.  Defendant-Appellee presumably addressed this issue because it was mentioned in Plaintiff-Appellant's Complaint filed with the district court.

In his Reply brief, Plaintiff-Appellant argued that the district court erred in finding that he was unlikely to succeed on the merits of his claim because the Policy is impermissibly vague.  Mr. Overstreet had not presented an argument regarding the alleged impermissible vagueness of the Policy in his Motion for a Temporary Injunction, in his Motion for a Temporary Injunction Pending Appeal, during oral argument before the district court on his Motion for a Temporary Injunction, or in his final brief to this Court.

The Court finds that the district court correctly concluded that Plaintiff-Appellant is unlikely to succeed on the merits of this claim. Although searches and seizures conducted by government employers are subject to the strictures of the Fourth Amendment, the district court is likely to find, after a trial on the merits, that the Fourth Amendment does not apply under these particular circumstances because Mr. Overstreet has no reasonable expectation of privacy in the information sought by the LFUCG. In *Barry v. City of New York*, 712 F.2d 1554 (2d Cir. 1983), the Second Circuit considered the constitutionality of a financial disclosure statute adopted by the City of New York that applied to most elected and appointed officials, candidates for City office, and all civil service employees who earned an annual salary of $30,000 or above. *Id.* at 1556. Pursuant to the statute, covered employees and their spouses were required to provide extensive information about their personal finances, including, *inter alia*, "the identity of professional organizations from which the employee or a spouse derives $1,000 or more in income during the preceding year; the source of capital gains of $1,000 or more, other than from the sale of a residence; the source of gifts or honoraria of $500 or more; indebtedness in excess of $500 that is outstanding for 90 days or more; and the nature of investments worth $20,000 or more." *Id.* at 1557. Discussing the plaintiff employees' claims that the law violated the Fourth Amendment, the Second Circuit stated that it was "doubtful . . . whether the Fourth Amendment applies in this context. . . . [P]laintiffs plainly have no reasonable expectation that the information sought . . . can be withheld from their employers." *Id.* at 1564 (citing *Whalen*, 429 U.S. at 604 n.32). Likewise, this Court finds that the district court is likely to conclude that Mr. Overstreet has no legitimate expectation of privacy in the information sought by his employer, much of which is already a matter of public record.

Even if Mr. Overstreet does have a reasonable expectation of privacy in the information pertaining to his real property holdings, any search conducted by virtue of the Policy and

Although, under *Walker*, Mr. Overstreet is correct that Chief Judge Martin's order was, at least implicitly, based on the conclusion that he had met the requirements for the issuance of a preliminary injunction, this panel is, nonetheless, not bound to extend the life of that order. To the contrary, Chief Judge Martin's order, by its own terms, expires upon the disposition of this appeal from the district court's December 1, 2000 denial of Plaintiff-Appellant's motion for a temporary injunction. *See Fed. Trade Comm'n v. Food Town Stores, Inc.*, 547 F.2d 247, 249 (4th Cir. 1977) ("The injunction pending the appeal expires by its own terms upon disposition of the appeal."). Furthermore, Chief Judge Martin's ruling has no *res judicata* effect because it does not constitute a final adjudication of the merits of an issue. *Id.* The purpose of that order was to maintain the *status quo* only until this panel ruled upon Plaintiff-Appellant's appeal from the district court's order.

## III.   STANDARD OF REVIEW

The grant or denial of a preliminary injunction is reviewed for an abuse of discretion. *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001) (citations omitted). Accordingly, the district court's findings of fact will stand unless found to be clearly erroneous, but its legal conclusions are reviewed *de novo*. *Id.* (citations omitted).

In determining whether to issue a preliminary injunction, the Court must examine four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citing *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir.1997) (*en banc*)). These factors are not prerequisites, but are factors that are to be balanced against each other. *United Food & Commercial*

*Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir.1998) (citation omitted). A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it. *Leary*, 228 F.3d at 739 (citations omitted).

## IV.  DISCUSSION

### A.  Likelihood of Success on the Merits

In denying Plaintiff-Appellant's Motion for a Temporary Injunction, the district court concluded that Mr. Overstreet is unlikely to succeed on the merits of his case. The court based its conclusion on the fact that it could discern no constitutional violation from Defendant-Appellee's Real Property Policy and Disclosure Form. Mr. Overstreet now argues that the district court erred as a matter of law in its finding that the Policy and the Disclosure Form are not likely to be found to violate the United States Constitution. Although Mr. Overstreet's Complaint asserted that the Policy violates as many as five provisions of the Constitution, on appeal, he argues only that the Policy constitutes an invasion of his privacy and an unreasonable search under the Fourth Amendment to the Constitution.

### 1.  Right to Privacy

The Supreme Court has recognized that some of its cases may indicate the existence of an individual privacy interest in avoiding disclosure of personal matters. *Whalen v. Roe*, 429 U.S. 589 (1977). The *Whalen* Court observed that "the cases sometimes characterized as protecting 'privacy' have . . . involved . . . the individual interest in avoiding disclosure of personal matters." *Id.* at 598-99; *see Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457 (1977) (citing *Whalen* and finding that public officials may have a privacy interest in avoiding disclosure of personal matters that are unrelated to the acts they perform in their official capacities).

### 2.  Fourth Amendment – Unreasonable Search

Mr. Overstreet argues that the LFUCG's Disclosure Policy constitutes an unreasonable search and an invasion of his privacy in violation of the Fourth Amendment and Section 10 of the Kentucky Constitution.[5]

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. CONST. amend. IV. Under the Fourth Amendment, a "search" occurs "when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). "Searches and seizures by government employers or supervisors of the private property of their employees . . . are subject to the restraints of the Fourth Amendment." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987).

---

[5]Section 10 of the Kentucky Constitution states:

> The people shall be secure in their persons, houses, papers and possessions, from unreasonable search and seizure; and no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.

KY. CONST. § 10. The Kentucky Constitution provides individuals no greater protection from unreasonable searches and seizures than does the United States Constitution. *LaFollette v. Commonwealth*, 915 S.W.2d 747, 748 (Ky. 1996).

through his work, employees in the Engineering Division are sometimes privy to information regarding the LFUCG's interest in acquiring certain real estate. Thus, a conflict of interest could arise simply by virtue of his employment within that division. The Court, therefore, finds that the district court properly concluded that any privacy interest that government employees such as Mr. Overstreet may have in their financial affairs is likely to be outweighed by the public interests that are at stake.

The Court notes that Plaintiff-Appellant's reliance on *Moore v. City of East Cleveland* is misplaced. In *Moore*, a plurality of the Supreme Court struck down a city ordinance that limited the occupancy of dwelling units to single families, and defined "family" quite narrowly, such that extended families could not live together. *Moore*, 431 U.S. at 495-96. In striking down the ordinance, the Court discussed the long-recognized privacy interest one has in matters relating to family, including choices regarding family living arrangements, and concluded that "when the government intrudes on choices concerning family living arrangements, this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation." *Id.* at 499. Thus, Mr. Overstreet is incorrect in his assertion that, under *Moore*, the government is completely prohibited from inquiring into one's family living arrangements. To the contrary, while there may be a privacy right that protects one's right to determine one's family living arrangements, that right does not protect such arrangements from being disclosed.

Therefore, this Court finds that the district court did not err in its legal conclusion that Plaintiff-Appellant is unlikely to succeed on the merits of his claim that the LFUCG Real Property Policy and Disclosure Form violate his constitutional right to privacy.

This Court has been loath to view either *Whalen* or *Nixon* as having created a constitutional privacy right that protects against the disclosure of personal information. To the contrary, this Court has read those cases quite narrowly. Indeed, in *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981), we stated:

> Absent a clear indication from the Supreme Court we will not construe isolated statements in *Whalen* and *Nixon* more broadly than their context allows to recognize a general constitutional right to have disclosure of private information measured against the need for disclosure.
> . . .
> [W]e note that of the cases cited holding that there is a constitutional right to nondisclosure of private information, none cites a constitutional provision in support of its holding. It is understandable, though rare, to fail to cite a supporting provision of the Constitution when one is dealing with such well-established rights as those in the first or fourth amendments. It is quite a telling failure when the constitutional right at issue is not well-established.
>
> For all the foregoing reasons, we conclude that the Constitution does not encompass a general right to nondisclosure of private information.

*Id.* at 1089-90. The *DeSanti* court ultimately held that the constitutional right to privacy is restricted to protecting "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *Id.* at 1090 (citations omitted). Since *DeSanti*, this Court has not strayed from its holding, and continues to evaluate privacy claims based on whether the interest sought to be protected is a fundamental interest or an interest implicit in the concept of ordered liberty. *See, e.g.*, *Cutshall v. Sundquist*, 193 F.3d 466, 480-81 (6th Cir. 1999) (finding that a state law, which required sex offenders to register with law enforcement agencies and

allowed law enforcement officials to release registry information to the public, did not violate the sex offender's constitutional right to privacy because no fundamental interest was implicated); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062 (6th Cir. 1998) (concluding that the privacy interest of undercover police officers in the personal information contained in their personnel records – the interest in preserving their lives and the lives of their families – implicated a fundamental liberty interest). When an individual's interest in the nondisclosure of personal information is of a constitutional dimension, the Court must balance the individual's interest in nondisclosure against the public's interest in the invasion of privacy. *Kallstrom*, 136 F.3d at 1061 (citing *DeSanti*, 653 F.2d at 1091).

Mr. Overstreet alleges, first, that the LFUCG has infringed his right to privacy because the Policy constitutes a demand for the disclosure of family living arrangements, which he claims is prohibited because of the privacy interests at stake. *See Moore v. City of East Cleveland*, 431 U.S. 494 (1977). Second, he contends that the intrusion on his privacy interest is not justified because, unlike other public officials, Mr. Overstreet is not in a position to influence the planning, zoning, or housing in Fayette County by virtue of his employment. Finally, Mr. Overstreet argues that any legitimate interest the government may have in obtaining information regarding his real estate holdings is outweighed by the fact that the LFUCG intends to make the provided information a matter of public record.

The Court finds that the district court correctly concluded that Plaintiff-Appellant is unlikely to succeed on his right to privacy claim. Because this Court has determined that the constitutional right to privacy is protected only when the interest at stake involves a fundamental interest, or an interest that is implicit in the concept of ordered liberty, the Court's analysis must begin with a determination of whether Mr. Overstreet's privacy interest in his financial affairs is such an interest. The Supreme Court has found that "fundamental"

interests include the privacy interest one has in matters relating to marriage, procreation, contraception, family relationships, child rearing, and education. *See Paul v. Davis*, 424 U.S. 693, 713 (1976). The privacy interest one may have in one's personal finances and real estate holdings is far afield from such intimate concerns. *See Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999) (finding that production of plaintiffs' loan file to third parties is "far afield" from the fundamental interests protected by the right to privacy). Therefore, Mr. Overstreet's claim that the LFUCG infringed his right to privacy is likely to fail on the merits.[4]

Even if the facts did implicate a fundamental interest, the Court would nonetheless conclude that Plaintiff-Appellant's right to privacy claim will likely fail because any protected privacy interest that he might have will probably be outweighed by the public interest in the disclosure of his personal information. In *Barry v. New York*, 712 F.2d 1554 (2d Cir. 1983), the Second Circuit concluded that the mandatory disclosure of financial information by government employees and their spouses, which was then made available to the public, implicated the constitutional right to privacy, but that such right was not infringed because the mandatory disclosure was justified by a substantial, possibly compelling, state interest. *Id.* at 1559-60 (emphasizing the government's interests in deterring corruption and conflicts of interest among city officers and employees, and enhancing public confidence in the integrity of government). As the Second Circuit did in *Barry*, this Court recognizes the substantial public interest in preventing corruption in local government and ensuring that no conflict of interest exists between the personal lives and public duties of government employees. Significantly, despite Mr. Overstreet's contention that he has no significant influence on zoning or other real estate issues

---

[4]The fact that the LFUCG Policy requires information about Mr. Overstreet's immediate family does not alter this conclusion, as members of Mr. Overstreet's immediate family have no more a fundamental privacy interest in their financial affairs than he does.