NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0443n.06

No. 21-3499

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 03, 2022
DEBORAH S. HUNT, Clerk

DINESH PATEL, et al.,

    Plaintiffs - Appellants,

v.

ANDREW GLENN, et al.,

    Defendants - Appellees.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: COLE, GIBBONS, and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. The City of Maumee, Ohio (the City) declared the Budget Inn Maumee (the Motel) a public nuisance under Maumee Building Code Section 1345.01(a) and ordered the Motel to be vacated because of alleged dangerous conditions. The owner of the Motel, Lovesai, LLC, along with its principal, Dinesh Patel, and his wife, Minaxi Patel, brought suit in federal court and moved for a preliminary injunction against the City and various officials. The district court denied the motion. We AFFIRM.

**I.**

The Budget Inn Maumee operates within a commercial zone in Maumee and is subject to the City's code and Ohio's laws governing hotels and motels. On or about September 10, 2020, two Maumee zoning officials, Zachary Jenkins and Andrew Glenn, visited the Motel after

receiving reports of potential code violations.[1] Jenkins took photographs of several potential code violations, including what he determined were generally deteriorating conditions present at the Motel. The City later noted many code violations, which included, in relevant part, "several areas of spalling concrete on the underside of the second story balcony and several support piers for [the] balcony [that] are crumbling and/or have been improperly repaired."[2] Dinesh Patel witnessed Jenkins taking photos. Jenkins claims that the City, through an official, orally notified Mr. Patel at that time that the code violations existed and that the Motel needed to be brought into compliance before October 21, 2020. Mr. Patel disputes this claim.

On October 21, 2020, Jenkins and Glenn, accompanied by a police officer, returned to the Motel. Mr. Patel accompanied them on a tour of the premises, though Mr. Patel disputes that he consented to the inspection. At this time, according to Jenkins, he observed the same violations that existed on September 10, 2020.[3] The City determined that spalling and falling concrete was

---

[1] The City is authorized to find and abate public nuisances. *See* Maumee Municipal Code §§ 1345.01–1345.99. Under the City's code, a public nuisance is "[a]ny Structure that is in a state of any of, but not limited to . . . dilapidation, deterioration or decay . . . and, dangerous to anyone on or near the premises." *Id.* § 1345.01(a). The City may take immediate action to abate a public nuisance if the nuisance presents "an imminent risk of physical harm." *Id.* § 1345.08(a)–(b). And the City can do so without prior notice. *Id.* § 1345.08(a).

[2] The City identified many other code violations, including a deteriorated parking lot; broken and heaving concrete and asphalt over an improperly filled swimming pool; rotting wood and improperly maintained weatherproofing on exterior walls; deteriorating, broken, and missing structural supports for the second story; rotting materials on the exterior walls, windows, and doors of a detached accessory structure; broken fencing surrounding a dumpster; and removal without replacement of shrubbery, trees, and plants. We focus on the spalling and falling concrete because it was the condition that the City identified as creating an immediate and significant safety concern.

[3] There are several disputes of fact about code violations not directly related to the deteriorating conditions of the Motel. These violations include whether the Motel wrongfully housed extended stay guests, whether certain work was done without permits, and whether the Patels properly occupied an apartment at the Motel. We do not discuss those other violations because the violation that was the predicate for the district court's ruling was the City's determination that the Motel was unsafe for human occupancy.

an immediate and significant safety concern that endangered the safety of the public and the Patels, who resided at the Motel.

Jenkins and Glenn provided Mr. Patel with a Notice of Public Nuisance and Notice of Code Violations (the Notices), along with hard copies of several chapters of the City's code and photographs of the Motel. The Notices informed the Patels and the Motel's owner, Lovesai, LLC, that the City declared the Motel to be a public nuisance and demanded that the Motel be vacated for safety reasons. The documents included information about how the various issues could be remedied, including, among other things, meeting landscaping requirements and design standards and submitting a site plan for review. Also included in these documents was a notice of the right to appeal the City's decision, as well as the option to request additional time if some hardship existed. Jenkins and Glenn further directed the Patels to vacate the premises, and Mr. Patel agreed to notify motel guests of the need to vacate by 7 p.m. that day. Jenkins then put up three signs notifying the public that the Motel was unsafe for human occupancy and left the premises. Police later escorted the Patels from the Motel.

After their removal from the property, the Patels did not appeal the City's public nuisance determination. Rather, Mr. Patel hired two engineers, Dwight Gilliland and Larry Fast, to inspect the Motel and investigate the violations identified in the Notices. Fast, along with Mr. Patel, visited the Motel on October 29, 2020, to inspect the premises and assess the issues. Gilliland, at the direction of Mr. Patel, provided the City with two landscaping-related drawings in November 2020 to propose solutions to the landscaping issues.

On November 3, 2020, Fast sent a letter to the City explaining that he had inspected the Motel. He acknowledged in that letter the "spalled concrete slabs and exposed rusted bottom rebars in the walkways surrounding the second floor rooms," as well as "spalled and displaced

bricks at the upper brick columns below the walkways." Fast suggested that, if barricades were installed, the rooms on the first floor could be used safely while the second-floor walkways and brick column tops were being repaired. He also stated that he found no structural reasons why the Patels should not reside at the Motel during repairs.

On November 14, 2020, Fast sent another letter to the City, this time explaining he had performed a "structural investigation" of the second-floor walkways. Fast again confirmed the spalling concrete and other issues the City had identified in the Notices. He also acknowledged that one-third of the brick support columns for the second story had cracked and broken bricks, and he noted eleven areas of spalling concrete on the underside of the second floor. But Fast concluded that these issues—which the City considered dangerous—did not preclude human occupancy at the Motel. Rather, according to Fast, both the first and second floors of the Motel could be occupied safely during necessary repairs.

At the behest of Jenkins, Mr. Patel met with Jenkins and several other City officials on December 7, 2020. In that meeting, the City did not discuss the spalling and falling concrete but reiterated concerns over work done without the required permit. Mr. Patel asked to move back into the Motel, but the City denied his request because it concluded that the unsafe conditions remained unabated.

Fast then submitted building plans for necessary repairs, which the City approved in early January, 2021. But the City noted that Mr. Patel still needed to submit a zoning site plan for review, obtain full approval of the site plan, and obtain a City zoning permit. The City also reminded Fast that the contractor doing the work would need to register with the City. Fast conveyed those things to Dinesh. Despite these communications, Mr. Patel has yet to submit the necessary site plan, and the proposed contractor for the work did not register with the City.

The Patels and Lovesai filed a lawsuit in February 2021 seeking, among other things, a preliminary injunction to lift the City's order vacating the Motel and to allow the Patels to reopen it.[4] The Patels allege that the City violated their Fourth and Fourteenth Amendment rights when it condemned the Motel as unfit for human occupancy. According to plaintiffs, the City illegally seized the Motel in violation of the Fourth Amendment, violated their procedural and substantive due process rights under the Fourteenth Amendment, and discriminated against them in violation of the Fourteenth Amendment.

The district court denied the motion for a preliminary injunction. It found in the City's favor on all legal factors relevant to the motion. First, the district court determined that the Patels and Lovesai are not likely to succeed on the merits of their claims. In this regard, the district court found several relevant facts. First, it found that the conditions reported in the October 21, 2020 Notices were documented by photographs taken during the September inspection. Second, the district court noted that the Patels and Lovesai did not avail themselves of the right to appeal after receiving the Notices. Lastly, the district court found that, based on the facts and arguments presented, the Motel was not structurally fit for public occupancy.

Because the City conducted an inspection that deemed the Motel hazardous, provided the Notices, and notified the Patels and Lovesai of the appeals process, the district court determined plaintiffs would likely not succeed on their Fourteenth Amendment procedural due process violation claim or their Fourth Amendment unlawful seizure claim. And because the structure was most likely unfit for public occupancy, the district court determined plaintiffs would likely fail in

---

[4] There is a dispute whether Minaxi Patel has standing. She is an employee of Lovesai, the entity that owns the Motel, but unlike Mr. Patel, she is not a principal or agent of Lovesai, according to Mr. Patel's affidavit. It is unnecessary to address Mrs. Patel's standing because Lovesai and Mr. Patel undisputedly have standing and the district court's ruling on the subject motion may be disposed of without reaching the issue of Mrs. Patel's standing.

their Fourteenth Amendment substantive due process claim: it did not "shock the conscience" when the government condemned property considered unsafe for human occupancy. The district court also held that plaintiffs would likely fail on their equal protection selective enforcement claim because plaintiffs did not provide any instances where the City ignored safety violations in motels owned by individuals of different nationalities.

The district court also found that the Patels and Lovesai did not meet the other factors for granting a preliminary injunction. As for irreparable harm, the district court concluded that the harm originated with plaintiffs in both their initial failure to prevent the hazardous conditions and their ongoing refusal to mitigate or appeal the City's actions. Next, given the conditions of the Motel, the district court determined that the risk of harm to guests if the Motel were reopened would outweigh any adverse consequences to plaintiffs if the district court declined to issue the injunction. Finally, the district court determined it would not serve the public interest to grant the injunction because it would significantly impair the City's ability to enforce its building and zoning codes. Plaintiffs timely appealed the denial of injunctive relief.

## II.

This court reviews a district court's weighing of the preliminary injunction factors under an abuse of discretion standard. *Daunt v. Benson*, 956 F.3d 396, 406 (6th Cir. 2020). Within this analysis we subject "factual findings to clear-error review and examin[e] legal conclusions de novo." *Id.* (citing *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014). A district court abuses its discretion when it "relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Cole v. City of Memphis*, 839 F.3d 530, 540 (6th Cir. 2016) (citation omitted).

A preliminary injunction is an "extraordinary remedy," not a matter of right. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689 (2008)). Thus, it is only awarded upon a "clear showing that the plaintiff is entitled to such relief." *Id.* at 22. Four factors govern whether to issue a preliminary injunction: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). The moving party need not prove all factors—they are considered and balanced against each other. *See id.* (citing *United Food & Com. Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998)).

The Patels and Lovesai argue that the district court abused its discretion by not balancing the factors, instead treating them as required elements. Plaintiffs further challenge the district court's conclusions with respect to each element.

At the outset we must evaluate a key factual finding by the district court that underpins much of our analysis: whether plaintiffs adequately demonstrated that the Motel was structurally safe. The district court did not abuse its decision when it determined that the Motel was a public nuisance and more likely than not unfit for public occupancy. Based on the City's code, it was not clear error for the district court to conclude that the Motel's condition fit the definition of public nuisance and that City officials properly designated the Motel an immediate danger to public safety. *See* Maumee Municipal Code §§ 1345.01(a), 1345.08(a)–(b). Review of the photos taken by zoning officials further supports this conclusion. When Jenkins and Glenn visited the Motel in

September 2020, they determined the premises presented an immediate and significant safety concern. The district court committed no error in concluding that this visit constituted an inspection consistent with the City code. *See* Maumee Municipal Code § 1345.02(a).[5] Plaintiffs did not contest the existence of the deteriorating concrete or other identified defects on the property; they contested only the City's conclusion that the conditions constituted an emergency or exigency requiring the removal of occupants from the Motel. They countered the City's claims with Fast's, who confirmed the City's basic findings but argued that the Motel, despite spalling concrete, could be safely occupied during repairs if proper safety measures were taken. But Fast's conclusions do not defeat the logical conclusion of zoning officials that the deteriorating, falling concrete above the entrances to motel rooms could result in concrete falling onto guests and cause serious injury or death. Thus, we find no clear error in the district court's finding that plaintiffs failed to establish that the Motel was safe for human occupation.

Finding no clear error in the district court's factual conclusions, we turn to evaluate each of the preliminary injunction factors for plaintiffs' three claims.

---

[5] The Patels and Lovesai insist that for proper notice to have occurred, section 1345.02(a) requires that the Zoning Administrator (Glenn) inspect the premises and then, after he makes a finding that a public nuisance exists, that a second inspection should be conducted by the Chief Building Official (Jenkins). *See* Maumee Municipal Code § 1345.02(a). But here both Glenn and Jenkins visited the Motel together. The simultaneous inspections by Glenn and Jenkins seem to comply with the code requirements for proper notice. Regardless, the district court committed no error in finding that no notice was likely required because the Chief Building Official or the Zoning Administrator could determine that the nuisance constituted an emergency, which both did. *See* Maumee Municipal Code § 1345.08(c).

A. Likelihood of Success on the Merits

Plaintiffs argue that three of their claims have a likelihood of succeeding on the merits. We address each claim in turn.[6]

1.    Procedural Due Process

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. This clause has a procedural component, which "is traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (quoting *Collins v. City of Harker Heights*, 503, U.S. 115, 125 (1992)). Procedural due process "generally requires that the state provide a person with notice and an opportunity to be heard *before* depriving that person of a property or liberty interest." *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005) (emphasis added).

But there are exceptions to the general rule of pre-deprivation notice. Under *Parratt*, the Supreme Court identified cases when "either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the property of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Parratt v. Taylor*, 451 U.S. 527, 539 (1981). When the government reasonably determines there is an emergency, post-deprivation procedures will generally satisfy procedural due process requirements. *See, e.g.*, *Harris v. City of Akron*, 20 F.3d 1396 (6th Cir. 1994) (finding that *Parratt* applied when a city government demolished a building because it believed there was an emergency

---

[6] In addition to the claims discussed below, the district court addressed plaintiffs' discrimination claim. Plaintiffs argue, however, that they did not rely on this claim as a basis for preliminary injunctive relief. We therefore do not address this claim on appeal.

related to the building's existence); *see also Phillips v. Comm'r of Internal Revenue*, 283 U.S. 589, 596–97 (1983) ("Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate.").

The Patels and Lovesai offer several arguments for why *Parratt* does not apply to the City's actions and allow the post-deprivation proceedings to satisfy plaintiffs' procedural due process rights. First, they argue that the district court did not properly consider their interest in the Motel, which they claim is more than just a "property" right. The Patels argue that their apartment in the Motel, as well as the nature of the Motel as their livelihood, create a stronger interest in the Motel. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53–54 (1993) ("[The] right to maintain control over [one's] home, and to be free from governmental interference, is a private interest of historic and continuing importance."); *Ramsey v. Bd. of Educ. of Whitley Cnty.*, 844 F.2d 1268, 1273 (6th Cir. 1988) ("[T]he property interest in a person's means of livelihood is one of the most significant that an individual can possess."). Second, the plaintiffs argue that the district court erred in implying that an emergency existed in the case of the Motel. According to plaintiffs, the Motel could not have been an "imminent danger," and thus the deprivation was not "unpredictable or 'random.'" They explain that the City waited over a month from the initial visit to issue the Notices declaring the Motel a nuisance, meaning that there was no true emergency and that opportunity existed for a pre-deprivation hearing. Third, plaintiffs argue that the post-deprivation process is inadequate because it does not provide monetary damages as a possible remedy. *See S. Ohio Coal Co. v. Off. of Surface Mining, Reclamation & Enf't*, 20 F.3d 1418, 1422–24 (outlining several exceptions to requiring parties to exhaust administrative remedies,

including where an agency acts beyond its authority, where remedies are inadequate or not efficacious, or where pursuing such remedies would be futile.)

The district court's rejection of these arguments was no abuse of discretion. First, the argument that the property right here is greater than that in *Parratt* because it involves the Patels' livelihood and home is unfounded. "[E]ven when a person's means of livelihood is connected to the deprivation claim, due process does not always require a predeprivation hearing or support a section 1983 action when any interest in employment is affected." *Ramsey*, 844 F.2d at 1273. Likewise, a home that is declared to be a nuisance, unsafe for human occupancy, and in violation of code can be vacated immediately, without pre-deprivation proceedings. *Mitchell v. City of Cleveland*, 172 F.3d 49, *1, *3 (6th Cir. 1998) (unpublished table opinion).

Second, a government's delay in addressing an emergency does not necessarily negate the existence of an emergency. The emergency exception to *Parratt* does not apply where an official falsely invokes the emergency need for quick action or when no true emergency condition existed. *DiLuzio v. Village of Yorkville*, 796 F.3d 604, 614 (6th Cir. 2015). However, neither of those circumstances exist in the case of the Motel. Here, it is an ongoing emergency situation arising from conditions that likely existed on both the initial visit by Jenkins and the follow-up visit by Jenkins and Glenn. It is possible that Jenkins had grounds to shut down the Motel when he initially discovered the spalling. However, it was not until the October 21st visit that Jenkins discovered the true extent of the code violations, all of which contributed to his conclusion that the property was an immediate danger. The relevant inquiry is whether it is likely that the Motel presented emergent, dangerous conditions that qualified as a nuisance on October 21, 2020. *Hudson v. Palmer*, 468 U.S. 517, 534 (1984) ("Whether an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the state is in

a position to provide for predeprivation process."). We conclude that it did and thus the City, acting through its officials, acted properly in vacating the property, regardless of whether Jenkins himself could have foreseen this situation and thus provided for predeprivation proceedings.

Finally, with respect to the post-deprivation remedy, the mere lack of monetary damages in the City's post-deprivation process does not make it constitutionally inadequate, as plaintiffs could have followed that appeal with an action at law. *See Parratt*, 451 U.S. at 539 (describing how a property owner faced with immediate action "could recover his damages in an action at law after the incident"). The code covering public nuisances provides for adequate post-deprivation process through appeals. *See* Maumee Municipal Code § 1345.05(a). Notices provided to plaintiffs explained the right to appeal the City's decision within a 72-hour period. It is therefore likely that plaintiffs had adequate opportunity post-deprivation to receive due process; they simply elected not to avail themselves of it. Plaintiffs could have used a combination of city appeals and actions at law to obtain the results they seek; therefore, the absence of a money damages remedy in the City's process cannot be a constitutionally fatal flaw.

The district court therefore did not abuse its discretion in finding that plaintiffs were unlikely to succeed on their claims of denial of procedural due process.

2. Substantive Due Process

The Due Process Clause of the Fourteenth Amendment also contains a substantive component—"[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Johnson v. City of Saginaw*, 980 F.3d 497, 513 (2020) (quoting *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014)). Contexts in which courts have found that substantive due process is violated include government action that was "willful and unreasoning" or such action that "shocks the conscience." *Id.*

Like their procedural due process claims, plaintiffs' substantive due process arguments appear unlikely to succeed on the merits, as the district court found. The Patels and Lovesai claim that the City violated their substantive due process rights by closing the Motel. They argue that, because the Motel was not a danger to the public and the Notices were written before the October 21st inspection, the City acted arbitrarily or without reason. However, the record belies plaintiffs' claims. Jenkins's prior visit gave him reason to believe, perhaps, that the Motel needed to be closed to protect human health and safety. By preparing Notices for that possibility, he acted logically and with reason. The district court properly concluded that the closure of the Motel did not violate plaintiffs' substantive due process rights.

### 3. Fourth Amendment

The Fourth Amendment provides a right to be secure in one's house and effects from unreasonable seizures. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). A "seizure" occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Id.* Though typically applied in the criminal context, unreasonable seizures may arise in a civil context as well. *See Soldal v. Cook Cnty.,* 506 U.S. 56, 66–67 (1992). Regardless of the context of the seizure, "'reasonableness is still the ultimate standard' . . . [and] the reasonableness determination will reflect a 'careful balancing of governmental and private interests.'" *Id.* at 71 (citations omitted).

The Patels argue that they were subject to an unreasonable seizure when the City sought their removal from the Motel, thus interfering with the Patels' enjoyment of their home and personal belongings. The Patels accurately highlight the sanctity and respect a private home deserves. *See Oliver v. United States*, 466 U.S. 170, 178 (1984) (noting that the Supreme Court "has stressed 'the overriding respect for the sanctity of the home that has been embedded in our

traditions since the origins of the Republic.'"). The Patels claim their home and possessions were unreasonably seized because the Motel did not present an emergency for the City and was safe for human occupancy despite the deterioration.

As with plaintiffs' other claims, the district court correctly concluded that the Fourth Amendment claim too is unlikely to succeed. As an initial matter, there is some dispute about whether the Patels lawfully resided in their apartment at the Motel. But for purposes of its ruling, the district court assumed that the couple had a legitimate interest in their apartment. Even so, the district court committed no error in holding it likely that the existence of a danger to the public allowed the City to override the individual right to be secure in one's home and personal effects. *See Keene Grp. v. City of Cincinnati*, 998 F.3d 306, 315 (6th Cir. 2021) ("[A]s long as procedural due process standards are met and no unreasonable municipal actions are shown, a nuisance abatement action does not violate the Fourth Amendment.") (citing *Santana v. City of Tulsa*, 359 F.3d 1241, 1245 (10th Cir. 2004)); *Embassy Realty Invs. v. City of Cleveland*, 572 F. App'x 339, 345 (6th Cir. 2014) (finding that warrantless entry and demolition of property after it has been declared a nuisance "does not invade a constitutionally-protected privacy interest"). There is also some dispute over the state of the Patels' personal property *after* the City closed the Motel. But the Patels do not dispute that the City informed them that they could later retrieve personal belongings if they called beforehand to ensure that the police knew the couple had permission to visit the Motel. Although, for an indeterminate period, the Patels' personal property was inaccessible because of the City's order to vacate, the district court correctly held that this occurrence likely was not an illegal seizure, but a natural consequence of the City's conclusion that the building was unfit for occupancy. The Patels have shown no likelihood of success on their Fourth Amendment claim of unlawful seizure.

B. Irreparable Harm

To establish irreparable harm, the moving party must show "irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). Harm is not considered irreparable when it can be fully compensated by monetary damages. *Overstreet,* 305 F.3d at 578.

Plaintiffs appear to allege financial injury from the closure of the Motel and lack of access to the property, and constitutional injury from the claims they allege. For the economic damages they claim, there is no irreparable harm. *Id.* And although constitutional violations carry a presumption of irreparable harm, we have already concluded that the constitutional claims are without merit, meaning that they have made no showing of irreparable harm from constitutional injury. *Id.*

C. Harm to Others

Because the district court did not err in finding the Motel was more likely than not unfit for occupancy, there likewise was no abuse of discretion when it concluded that the continued existence of the deteriorating conditions at the Motel presented a risk of physical harm to the public that outweighed the adverse consequences to the Patels and Lovesai if no injunction issued.

D. Public Interest

Finally, the district court did not err in finding that the public interest would be served best through denial of the preliminary injunction. Granting an injunction would significantly impair the City's ability to enforce its building and zoning codes in the future with respect to other public nuisances.

**III.**

For the foregoing reasons we AFFIRM the district court's order denying the preliminary injunction.