NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0151n.06

No. 13-1535

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SHEAN SATGUNAM, M.D., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MICHIGAN STATE UNIVERSITY, | ) | COURT FOR THE WESTERN |
| jointly and severally; BRETT BEAN, | ) | DISTRICT OF MICHIGAN |
| individually and in his respective | ) | |
| official capacity, jointly and severally, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MARC BASSON; RICHARD WARD; | ) | |
| MARSHA D. RAPPLEY; WILLIAM D. | ) | |
| STRAMPEL; MARY H. MUNDT; | ) | |
| GLENDA MOORER; KIM WILCOX; | ) | |
| JOHN DOE, individually and in their | ) | |
| respective official capacities, jointly and | ) | |
| severally, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

**FILED**
Feb 25, 2014
DEBORAH S. HUNT, Clerk

BEFORE: SUHRHEINRICH, GIBBONS and COOK, Circuit Judges.

**SUHRHEINRICH, Circuit Judge.** This is a § 1983 case concerning procedures used to remove a physician's clinical privileges and subsequent reporting to the National Practitioner Data Bank ("Data Bank"). Plaintiff-Appellant Dr. Shean Satgunam ("Satgunam"), a surgeon formerly associated with the Michigan State University HealthTeam ("HealthTeam"), alleges

that Defendant-Appellees, Dr. Marc Basson ("Basson"), and other members of the MSU HealthTeam Governing Board ("Governing Board") (collectively "Defendants") violated his due process rights through the hearing process used to terminate his staff privileges and erroneously reported his termination to the Data Bank. The district court granted a preliminary injunction mandating that the Governing Board conduct an appeal hearing with appropriate due process protections, but not requiring removal of the Data Bank report. The district court denied Satgunam's motion to modify the preliminary injunction. We AFFIRM.

## I. BACKGROUND

Satgunam is a board-certified general surgeon who held a three-year assistant professorship with MSU's College of Human Medicine. Marc Basson, M.D., is the Chairperson of MSU's Department of Surgery. Richard Ward is the Chief Executive Officer of HealthTeam. The remaining defendants are members of the HealthTeam Governing Board.

Satgunam began his tenure at MSU in July 2009. Under his employment contract, most of his time was to be spent in surgery practice, with the rest split between teaching, research, and administrative duties. With his appointment, Satgunam became a member of HealthTeam, the entity that coordinates MSU professors and employees who provide health care in area hospitals. MSU does not own or operate a hospital. Instead, its faculty and residents provide care through an affiliation with Sparrow Hospital ("Sparrow"), a private hospital in Lansing, Michigan.[1]

HealthTeam is governed by a set of bylaws that enable HealthTeam's Governing Board to establish strategies, policies, rules, and procedures governing the operations of HealthTeam. HealthTeam committees have established policies and procedures for peer review of members. Where a peer-review committee recommends taking disciplinary action against a member, it

---

[1] HealthTeam members practicing at Sparrow must also be credentialed by Sparrow, which is governed by its own bylaws and procedures. Sparrow is not a party to this litigation.

submits its recommendation to the HealthTeam Credentials and Privileges Committee. The Credentials and Privileges Committee has its own procedures for reviewing a member's record. Its policies provide for an appeal of any action affecting a member's clinical privileges, though the details of that proceeding are unspecified.

Satgunam's time at MSU was troublesome. Basson describes in his affidavit a series of events that caused him concern about Satgunam's abilities. First, in October 2010, one of Satgunam's patients died allegedly due to complications from laparoscopic bypass surgery. The patient's estate brought a medical malpractice suit, and MSU settled the claim at a cost of $650,000. HealthTeam peer-review criticized Satgunam's surgical technique. Basson met with Satgunam several times during Fall 2010, persuading Satgunam to stop performing laparoscopic surgeries without formally sanctioning Satgunam. However, despite Basson's request, Satgunam refused to undergo any training or mentoring program to improve his skills. Then, in September 2011, Satgunam performed another laparoscopic surgery. The patient died, again allegedly due to surgical error. Satgunam agreed not to perform laparoscopic procedures during the peer-review process on the condition that HealthTeam would not report the adverse cases to the Data Bank. Finally, in February 2012, another MSU physician sent Basson a letter complaining that Satgunam refused to take a patient referred to him for an appendectomy while Satgunam was on call. Satgunam claimed the patient was the responsibility of a doctor previously on call.

On February 22, 2012, the HealthTeam Surgery Department's Peer Review Committee completed a review of Satgunam's performance and issued a report. The next day, Basson met with Satgunam to discuss the review, which found significant problems with Satgunam's surgical record and mentioned the patient-transfer dispute. Basson told Satgunam that he was considering a suspension of his clinical privileges.

3

The district court notes that "[t]he exact details of what happened next are unclear." Satgunam claims that he received a letter from Basson the same day purporting to suspend his privileges and a follow-up letter the next day setting forth reasons for the suspension. In the follow-up letter, Basson noted that he and Satgunam initially agreed to reassign Satgunam to teaching and research for the remainder of his contract. Basson admitted "confusion" over his power to summarily suspend privileges and to recommend suspension in a non-emergency situation. Basson claims that he did not suspend Satgunam on February 23, 2012, the day they met, but waited to do so until February 24, 2012, when he sent the follow-up letter.

The matter was forwarded to the HealthTeam Credentials and Privileges Committee, which treated it as a "summary suspension" of clinical privileges. Credentials and Privileges Committee chair Dr. David Walsworth ("Walsworth") notified Satgunam that Basson's recommendation to suspend his privileges had been approved. Walsworth informed Satgunam that Satgunam could appeal the committee's decision, stating that "[a]rrangements are in the process to afford you this right of appeal. You will be notified of the date, time, and location for this meeting." Later, Satgunam obtained counsel, Jeffrey Herron ("Herron"), who asked the MSU Office of General Counsel about the procedures that governed the appeals process. Lynn Kriser ("Kriser"), HealthTeam's counsel, responded as follows:

> The hearing on Thursday is not an evidentiary hearing, but is a time for Dr. Satgunam to make a statement to the MSU HealthTeam Governing Board and provide any information he wishes them to consider. He can bring any documentary information he wishes such as reports or supporting opinions. There are not witnesses, opportunities to cross examine, etc. This will be true for the MSU HealthTeam as well. I believe there will only be the chair of the Department of Surgery making a statement about why there is a recommendation to suspend Dr. Satgunam's privileges.

Herron sought further clarification, claiming that HealthTeam's counsel failed to answer some of his questions. Kriser responded the day before the appeal, elaborating on the procedures:

4

Tomorrow Dr. Satgunam will have up to 30 minutes to present any information he wishes the board to consider in support of having the suspension removed. He may bring any documents he wishes, including case evaluations and statements from peers. The board may ask Dr. Satgunam questions. You may be present, but you cannot speak for Dr. Satgunam. The 30 minute time limit is firm. Dr. Satgunam will only be in the room during his presentation to the board.

The appeal hearing will not be recorded.

On March 8, 2012, the morning of the appeal, Satgunam filed the underlying action in this case in the United States District Court for the Western District of Michigan. He sought an *ex parte* temporary restraining order enjoining the appeal, claiming violation of his due process rights. The district court denied the temporary restraining order request on procedural grounds, because Satgunam's motion lacked an explanation for not having served the respondents.

On March 8, 2012, the appeal from the summary discipline took place under the procedures Kriser outlined. Satgunam's counsel attended the hearing, without voice. Satgunam spoke to the Governing Board, submitting an article about the risks of surgery and a copy of his court filings in this case. Satgunam was then excluded from the hearing while Basson presented his case. Following the hearing, the Governing Board voted to affirm Satgunam's suspension and terminated his privileges. The Governing Board informed Satgunam of its decision in a letter dated March 8, 2012. On March 19, 2012, MSU submitted its report to the Data Bank.[2]

On May 9, 2012, Satgunam filed an amended complaint dropping MSU as a defendant and adding due process and state law claims against individual members of the Governing Board

---

[2] Certain actions taken by qualified reporting entities must be reported to the Data Bank, which is operated by the Secretary of Health and Human Services. Data Bank reports are confidential. They may be accessed only by permitted entities, and by health care providers who may self-query. Satgunam's suspension triggered MSU's duty to report its action to the Data Bank under the Health Care Quality Improvement Act of 1986 (HCQIA) and associated regulations. *See* 45 C.F.R. § 60.5(d) (30-day reporting requirement for adverse actions taken by health-care entities); *see also* 42 U.S.C. § 11133(a)(1)(A); 42 U.S.C. § 1396r-2 (statutory reporting requirements).

5

and senior HealthTeam members. The complaint requested reinstatement, money damages, other injunctive relief, and attorney's fees. Satgunam's contract expired on June 30, 2012.

On December 12, 2012, Satgunam moved for a preliminary injunction, seeking removal of the Data Bank report. Satgunam argued that HealthTeam had not provided due process in terminating his privileges, that termination was unwarranted, and that MSU lacked jurisdiction over him following expiration of his employment contract on June 30, 2012.

On February 6, 2013, the district court entered an order granting in part Satgunam's motion. The district court found that due process was lacking, but it did not agree with Satgunam that MSU lacked jurisdiction over him. It remanded the matter for a second appeal hearing before the Governing Board, specifying procedural safeguards to be employed, including: transcription by a court reporter, prompt written findings of facts by the Governing Board, the right for Satgunam to be present to hear the evidence, and the ability to cross-examine witnesses. However, the court did not afford Satgunam's counsel a participatory role other than to be present, and it declined to order removal of the Data Bank report.

On February 20, 2013, the Governing Board conducted a second appeal hearing in compliance with the district court's injunctive order. Satgunam called no witnesses other than himself. The Governing Board panel decision, upholding termination of Satgunam's clinical privileges, and a related notice, were filed with the district court the next day. The voting members of the panel "unanimously decided that the preponderance of the evidence suggested that the pattern of clinical practice did indeed pose an immediate threat to patient safety, and that summary suspension was proper."

On March 11, 2013, Satgunam filed an emergency motion seeking modification of the preliminary injunction. Satgunam requested removal of the Data Bank report on three grounds:

(1) additional violations of his due process rights by the introduction of new charges and evidence without prior notice, (2) HealthTeam lacked authority to report Satgunam to the Data Bank, and (3) his termination was not supported by the evidence. Alternatively, Satgunam sought court-mandated modification of the Data Bank report to comport with the evidence presented at the second appeal hearing. The district court rejected the request for modification of the preliminary injunction on March 19, 2013, and this appeal ensued.

## II. ANALYSIS

Satgunam raises four issues regarding the relief ordered by the district court and its subsequent refusal to modify that injunction. First, he claims that the district court erred in ordering a second appeal hearing before the Governing Board because MSU lacked jurisdiction over him after his contract term expired. Second, Satgunam argues that the second appeal hearing, held pursuant to the district court's order, deprived him of due process because it was not heard by a neutral decision maker and he was denied participatory counsel. Third, he claims that the district court abused its discretion in declining to review the merits of the Governing Board's decision at the injunction proceeding. Finally, he asserts the district court erred in declining to order removal or modification of MSU's report to the Data Bank. For the reasons stated below, we find no error.

## A. MSU's Jurisdiction

Satgunam argues that the district court erred in ordering that he submit to a second administrative appeal before the HealthTeam Governing Board because it lacked jurisdiction to hold such a hearing after the term of his contract expired. This is disingenuous because the district court ordered precisely what Satgunam requested in his preliminary injunction. As the district court properly noted, "the doctrine of jurisdiction does not apply here." Rather, this

7

appeal hearing was held to make sure that the initial suspension was proper and should be affirmed, and Satgunam need not be a current MSU employee for such a hearing to take place. Further, Satgunam himself assumes that the court can order the Governing Board to take action regarding his suspension in his prayers for relief, and asks it to. We find that the district court committed no error in ordering Satgunam to submit to a second administrative appeal before the Governing Board.

### B. Internal Hearing and Due Process

According to Satgunam, the hearing conducted after the district court remanded this matter to the Governing Board in the preliminary injunction was constitutionally defective and deprived him of due process for two reasons: (1) the internal appeal was not heard and considered by a neutral decision maker, and (2) Satgunam's counsel was not permitted to play a participatory role.

### 1. Neutral Decision Maker

First, Satgunam claims that the district court erred in remanding to the Governing Board because it was not a neutral decision maker. He asserts that the individual Governing Board members were inherently biased because they are defendants in the underlying action, facing the prospect of liability for damages.

Satgunam raises this issue for the first time on appeal. During the Injunction Hearing, the district court invited him to voice concerns about the Governing Board's impartiality, and he declined to do so:

> THE COURT: . . . Do you have any concerns regarding the governing board in terms of their ability to fairly adjudicate an appeal which is consistent with due process?

MR. HERRON: In the abstract, no. With proper procedures and time and the due process required by the constitution, there's nothing to think that group of individuals could not in the first instance render a fair opinion.

Satgunam also did not introduce any impartiality contentions in his Emergency Motion to Modify Preliminary Injunction or his supporting brief. Generally, "an argument not raised before the district court is waived on appeal to this Court." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). There are narrow exceptions to this rule that do not apply here; we have "rarely" exercised our discretion to depart from the rule, *id.*, and we decline to do so here. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (holding that this Court "will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice"). We find that Satgunam has waived his right to argue this claim on appeal, and in turn find no error.[3]

## 2. Participatory Role of Counsel

Next, Satgunam argues that the district court should have ordered that his counsel be afforded a participatory role in the second appeal hearing. We find that it was proper for the district court to decline to do so for two reasons: (1) Satgunam has presented no substantive proof rebutting HealthTeam's findings, and (2) participatory counsel was not required under law.

First, Satgunam provides no substantive proof of what he would present to rebut the Governing Board's findings if afforded participatory counsel. In order to obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to

---

[3] Moreover, Satgunam fails to offer any support for his contention that the Governing Board was not impartial. Satgunam provides no assertion of actual bias or impropriety by any hearing member toward him. Instead, he relies on Governing Board members' alleged incentive to affirm their decision. We do not presume such categorical biases merely because a person is named as a party litigant. Instead, a party claiming bias on the part of an administrative tribunal "must overcome a presumption of honesty and integrity in those serving as adjudicators" by looking at the "circumstances present in the case." *Withrow v. Larkin*, 421 U.S. 35, 47, 58 (1975).

suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). When asked during oral argument before this court what evidence he would present through counsel to defend his handling of the three surgical cases at issue, Satgunam submitted nothing more than his counsel's intention to "put in cross-examination of witnesses who testified at the second proceeding." Oral Argument, *Satgunam v. Michigan State University, et al.*, No. 13-1535 (6th Cir. Jan. 29, 2014), *available at* http://www.ca6.uscourts.gov/internet/court_audio/aud2.php?link=http://www.ca6.uscourts.gov/internet/court_audio/recent/01-30-2014 - Thursday/13-1535 Satgunam v Basson.mp3&name=13-1535 Satgunam v Basson. However, Satgunam does not suggest what evidence would be introduced on cross-examination to bolster his case, and admits that he has no more substantive proof to submit. *Id*. We also note that the most serious allegations against Satgunam, two fatalities attributed to surgical error, are documented in medical and court records and would not be subject to cross-examination. By not offering any substantive arguments to rebut the Governing Board's findings, Satgunam did not establish a likelihood of success on the merits and in turn cannot demonstrate his entitlement to this extraordinary relief.

Second, Satgunam admits that in declining to order participatory counsel, the district court complied with Circuit law articulated in *Yashon v. Hunt*, 825 F.2d 1016, 1026 (6th Cir. 1987) (finding no right to counsel at a post-deprivation hearing of a doctor denied surgical privileges). A panel of this Court may not overrule a previous panel's decision. *Meeks v. Illinois Cent. Gulf R.R.*, 738 F.2d 748, 751 (6th Cir. 1984). The district court did not err in declining to order that Satgunam's counsel be afforded a participatory role in the second appeal hearing.

**C. Declining to Examine the Merits of the Governing Board Decision**

Satgunam claims that the district court abused its discretion in declining to review the merits of the Governing Board's decision at the injunction proceeding.

First, Satgunam argues that the district court determined that it could not review the merits of a healthcare entities' staffing decision. The district court did not so hold. Rather, it acknowledged that under the right circumstances, courts can, should, and in fact do review the propriety of staffing decisions by healthcare entities. As the district court noted, "the real question . . . is whether this is a proper situation for such review." The district court declined to review the substance of the Governing Board's decision because it recognized that this case's adjudicative posture militated against judicial review of the merits, not because it found itself unable to do so in all situations.

Second, Satgunam posits that injunction proceedings are an apt forum for merits review. We do not agree. At the injunction hearing, the district court only had before it the procedural due process issues. Allowing Satgunam to bootstrap procedural claims into review of his record as a surgeon would have significantly expanded the matter and required the district court to resolve issues that had not been sufficiently argued or briefed.

Finally, as noted above, Satgunam offers no substantive proof to rebut HealthTeam's findings on the merits. As such, he has not shown his likelihood of success if the court were to review the merits of HealthTeam's decision. We hold that the district court did not abuse its discretion by refusing to consider the merits during the injunction proceedings.

**D. Declining to Order Removal or Modification of the Data Bank Report**

Satgunam argues that the district court erred in declining to order removal or modification of MSU's report to the Data Bank. For the reasons stated below, we disagree.

### 1. Authorization to Report

First, Satgunam argues that the district court should have ordered removal of the data bank report. He asserts that HealthTeam lacked authorization to report him to the Data Bank because it failed to follow its own peer-review procedures. Satgunam's argument proceeds as follows. Under the HCQIA, 42 U.S.C. § 11133(a), HealthTeam can only report Satgunam to the Data Bank if it is a "health care entity." The HCQIA defines "health care entity" as "an entity… that provides health care services *and that follows a formal peer review process* for the purpose of furthering quality health care." 42 U.S.C. § 11151(4)(A)(ii) (emphasis added). Department of Health and Human Services regulations in turn define "formal peer review process" as "the conduct of professional review activities through formally adopted written procedures which provide for adequate notice and an opportunity for a hearing." 45 C.F.R. § 60.3. Thus, Satgunam claims, HealthTeam can only report him if it was acting through formally adopted written procedures. HealthTeam policy allows the Surgery Department's Peer Review Committee to "evaluat[e] a single practitioner's performance in a single case" only, and the Committee must perform that evaluation by comparing the case to "a generally recognized standard of care." Satgunam argues that the Committee violated those limitations by comparing a number of his cases against a similar number of cases involving another MSU doctor. The HealthTeam was not acting "through" its formal procedures when it sanctioned him, concludes Satgunam, and so it lacked the power to report him to the Data Bank.

The district court, however, declined to enter preliminary injunctive relief removing the report, finding that administrative exhaustion applied to the question of whether MSU is eligible to file its report with the Data Bank. We agree and find no error.

The HCQIA establishes procedures for administrative review of Data Bank reports. *See* 42 U.S.C. § 11136; 45 C.F.R. § 60.21. While the Act does not expressly require exhaustion, the general rule is that parties must "exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992). In such situations, courts must weigh "the litigant's interests in immediate judicial review" against "the government's interests in . . . efficiency or administrative autonomy." *Id*. at 146. "[S]ound judicial discretion governs" this determination. *Id*. at 144. The Supreme Court has listed three situations where the individual's interests weigh against requiring exhaustion: (1) where "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action"; (2) where the agency lacks power to grant effective relief; and (3) where the agency "is shown to be biased or has otherwise predetermined the issue before it." *Id.* at 146-48.

Satgunam does not allege that the Secretary of Health and Human Services ("Secretary") is biased or that he would not be able to receive a fair hearing before the Department. Further, his ability to file suit in federal court would not have been prejudiced had he raised this claim to the Secretary in the first instance. Satgunam provides no compelling reason why he could not have pursued administrative review of the Data Bank reports. The question turns on whether the issue of eligibility to report is within the Department's purview. The Secretary's power to review Data Bank reports is limited. The relevant regulation, 45 C.F.R. § 60.21(a) (entitled "How to dispute the accuracy of National Practitioner Data Bank information"), provides that a physician may "dispute the accuracy of a report concerning himself," but does not expressly cover challenges to reporting authorization. However, as the district court noted, the Secretary

13

apparently reads that language to provide for agency review of this issue, demonstrated by the language in the *Data Bank Guidebook*:

> The subject of a Medical Malpractice Payment Report (MMPR) or an Adverse Action Report (AAR) may dispute either the factual accuracy of the report or whether a report was submitted in accordance with the NPDB's reporting requirements, including the eligibility of the entity to report the information to the NPDB.

U.S. Dep't of Health & Human Servs., *National Practitioner Data Bank Guidebook* F–2 (2001), *available at* http://www.npdb.hrsa.gov/resources/NPDBGuidebook.pdf.

We find that administrative exhaustion applies here because the Secretary would be able to address Satgunam's claim about MSU's eligibility to file its Data Bank report. The district court appropriately refused to hear that claim until it was administratively exhausted, and did not abuse its discretion in declining to enter preliminary injunctive relief removing the report.

### 2. Modification of Report

Second, Satgunam argues that the district court erred when it declined to order modification of MSU's Data Bank report. He claims that, in light of the re-hearing decision, several aspects of the report are now inaccurate. The district court declined to enter preliminary injunctive relief modifying the report because it found that administrative exhaustion applies. We agree and find no error.

Mirroring the analysis above, whether administrative exhaustion applies to Satgunam's concerns about the content Data Bank reports depends on whether those issues are within the Secretary's purview. Issues regarding the content and accuracy of Data Bank reports are clearly within the Secretary's authority. *See Leal v. Sec'y, U.S. Dep't of Health & Human Servs.*, 620 F.3d 1280, 1284 (11th Cir. 2010) ("The Secretary reviews a report for factual accuracy deciding only if the report accurately describes the adverse action that was taken against the physician and

14

the reporting hospital's explanation for the action, which is the hospital's statement of what the physician did wrong."); *see also* National Practitioner Data Bank for Adverse Information on Physicians and Other Health Care Practitioners: Reporting on Adverse and Negative Actions, 75 Fed. Reg. 4656-01, 4671 (Jan. 28, 2010) ("We do not have the statutory authority to review the merits of adverse actions taken by reporting entities. We can only review (1) if the report is legally required or permitted to be filed, and (2) if the report accurately depicts the action taken and the reporter's basis for the action."). The district court appropriately refused to hear those claims until they were administratively exhausted, and did not abuse its discretion in declining to enter preliminary injunctive relief ordering modification of the report.

Therefore, we affirm the district court on the basis that Satgunam has not established his likelihood of success or entitlement to additional due process under law and because administrative exhaustion applied to the issues of whether MSU is eligible to file its Data Bank report and the content and accuracy of that report.

### III. CONCLUSION

The judgment of the district court is affirmed in all respects.

15